*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 01**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

COOPER JOHN ANTHONY VAN HUIZEN,
*Respondent.*

No. 20170304
Filed January 7, 2019

On Certiorari to the Utah Court of Appeals

Second Judicial District, Weber
The Honorable Ernie W. Jones
No. 131902542

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen., Salt Lake City, for petitioner

Elizabeth Hunt, Salt Lake City, for respondent

JUSTICE PETERSEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS and JUDGE CANNELL joined.

Having recused himself, JUSTICE PEARCE does not participate herein; DISTRICT JUDGE BRIAN G. CANNELL sat.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Cooper Van Huizen participated in an armed robbery when he was sixteen years old. The State charged him with three first-degree felonies in juvenile court. After a preliminary hearing, the juvenile judge bound over Van Huizen to the district court to be tried as an adult. There, Van Huizen pled guilty to lesser charges and the district court judge sentenced him to prison.

¶2     While he was serving his prison sentence, Van Huizen discovered that the juvenile judge who presided over his preliminary hearing was married to the Chief Criminal Deputy for the Weber County Attorney's Office—the office that prosecuted him on behalf of the State. Van Huizen moved to reinstate the time to appeal his bindover order, which the district court granted. He argued on appeal that the juvenile judge should have recused herself from his case because of her spouse's position.

¶3     The court of appeals agreed and vacated the juvenile judge's bindover order. In its ruling, the court made two holdings that are the subject of this petition. First, the court did not require Van Huizen to show either that he had preserved his judicial bias claim in the trial court or that an exception to preservation applied. The court reasoned that Van Huizen did not need to preserve his claim because he was not aware of the judge's conflict and was therefore unable to raise it. Second, the court held that Van Huizen was entitled to have the bindover decision vacated, even without showing that the judge's conflict caused him prejudice.

¶4     We must first determine whether it was error to excuse Van Huizen from preserving his claim of judicial bias. Because we conclude it was, we do not reach whether such a claim can be successful without a showing of prejudice.

¶5     We reverse the decision of the court of appeals and reinstate Van Huizen's conviction.

## BACKGROUND

¶6     At sixteen years old, Cooper Van Huizen participated in an armed robbery with four other individuals: a 17-year-old friend and three men he did not know who were all 18. Together, they took two revolvers and one airsoft gun from Van Huizen's house and threatened their way into the home of an acquaintance. They stole a small amount of marijuana, a wallet, and a phone.

¶7     Though the victim and a co-defendant variously claim that Van Huizen brandished one of the guns, carried a knife, or was the one who stole the wallet and phone, the record is not conclusive as to any of these facts. Van Huizen denies carrying a gun or knife. Though Van Huizen did not plan the robbery, the record shows that he participated in a text conversation about the robbery before it occurred, participated in the robbery, and obtained his father's guns for the group to use.

### A. Bindover from Juvenile Court

¶8    The Weber County Attorney's Office charged Van Huizen in juvenile court with two counts of aggravated robbery and one count of aggravated burglary—crimes that qualified as serious felonies under the Serious Youth Offender Act. *See* UTAH CODE § 78A-6-702 (2013).[1] Because Van Huizen was sixteen or older and accused of offenses listed in the Act, the statute required the State to charge Van Huizen in a criminal information rather than a petition. *Id.* § 78A-6-702(1).

¶9    At a preliminary hearing, the juvenile judge found the State had met its burden of proving there was probable cause to believe Van Huizen committed the offenses charged. *See id.* § 78A-6-702(3)(a). Under the Serious Youth Offender Act, the judge then had to determine whether Van Huizen could establish by clear and convincing evidence that "it would be contrary to the best interest of the minor and the best interests of the public" to bind Van Huizen over to the district court to be tried as an adult. *State v. Van Huizen*, 2017 UT App 30, ¶ 4, 392 P.3d 933 (citing UTAH CODE § 78A-6-702(3)(d),(e))(internal quotation marks omitted). The judge ultimately concluded Van Huizen should be bound over to district court. And Van Huizen did not move to quash the bindover order. *Id.* ¶ 8.

### B. District Court Plea, Sentencing, and Post-Conviction Motions

¶10    In the district court, represented by new counsel, Van Huizen pled guilty to two counts of robbery as second degree felonies. *Van Huizen*, 2017 UT App 30, ¶ 9. The other charges were dismissed. The district court sentenced Van Huizen to two concurrent sentences of one to fifteen years in prison. *Id.*

¶11    Van Huizen filed several post-trial motions in the district court, including a motion to reinstate his time to appeal the bindover order and a motion to quash the bindover order. The district court denied most of Van Huizen's motions, but did reinstate his opportunity to appeal the bindover order with the agreement of the State. Van Huizen appealed the district court's decisions on all his post-conviction motions.

---

[1] Throughout this opinion we cite to the 2013 version of the Utah Code, which governed during the relevant timeframe.

### C. *Court of Appeals Decision*

¶12    Before the court of appeals, Van Huizen argued that the juvenile judge should have recused herself under rule 2.11 of the Utah Code of Judicial Conduct because she was married to the Chief Criminal Deputy of the office that prosecuted him. *Van Huizen*, 2017 UT App 30, ¶ 13. Van Huizen also raised two additional grounds to vacate the bindover order—ineffective assistance of his juvenile court counsel and plain error of the juvenile court with respect to the application of the Serious Youth Offender Act. *Id.* ¶ 12. The court of appeals addressed only the appearance of partiality issue. *Id.*

¶13    The court of appeals held that the juvenile judge's undisclosed marriage to the Chief Criminal Deputy—an attorney in the "chain of command" at the prosecuting county attorney's office—created an appearance of partiality.[2] *Id.* ¶ 46. It is undisputed that Van Huizen did not raise this issue in the juvenile court, and the juvenile judge did not have an opportunity to address it. *Id.* ¶ 50 n.15. But the court of appeals concluded that the usual rules of preservation did not apply to this claim because the judge had not disclosed the relationship on the record and therefore Van Huizen did not know about it and could not have raised it. *Id.* The court also held that Van Huizen did not need to show he was prejudiced by the judge's alleged partiality to prevail on his claim. *Id.* ¶ 59. The court vacated the bindover order and remanded for a new hearing in juvenile court before a different judge. *Id.* ¶ 65.

¶14    The State and Van Huizen cross-petitioned for certiorari. We granted the State's petition on two issues: (1) whether the court of appeals erred in concluding that preservation did not apply to Van Huizen's judicial bias claim, and (2) whether it was error to allow Van Huizen to prevail on this claim without a showing of prejudice because the judge did not disclose the relevant facts on the record.

¶15    Although we did not grant Van Huizen's cross-petition for certiorari, we permitted him to raise the issues he included in

---

[2] The court did not rely upon the judge's former employment in the Weber County Attorney's Office as a basis for recusal.

his petition as alternative grounds for affirmance.[3] We have jurisdiction to hear this case pursuant to Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶16   "On certiorari, we review the court of appeals' decision for correctness." *PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 20, 424 P.3d 162 (citation omitted).

## ANALYSIS

### I. PRESERVATION

¶17   We must decide as a preliminary matter whether Van Huizen's judicial bias claim is exempt from the preservation requirement. We conclude it is not. As with any other claim, Van Huizen must have raised this issue in the trial court or be able to show that an exception to preservation applies.

¶18   Before the court of appeals, the State argued that the court must review Van Huizen's judicial bias claim for plain error because he did not raise it in the juvenile court. The court of appeals rejected the State's contention, reasoning that Van Huizen need not have preserved his claim because he did not have the opportunity to raise the issue in the juvenile court. *State v. Van Huizen*, 2017 UT App 30, ¶ 50 n.15, 392 P.3d 933. The court concluded that the juvenile judge had the "duty to disclose facts relevant to disqualification in the first instance" and, because she

---

[3] Van Huizen prevailed in the court of appeals on all issues before us, so he may not cross-petition for affirmance on alternative grounds that do not affect the outcome of the court of appeals' decision. "Appellees . . . may not use a cross-appeal as a vehicle for arguing for the affirmance of a [lower] court's judgment. Appellees must instead raise an alternative ground for affirmance in the briefing of the initial appeal." *Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶ 62, 361 P.3d 63. If appellees "merely desire the affirmance of the lower court's judgment, they need not, and should not, cross-appeal or cross-petition." *State v. South*, 924 P.2d 354, 356 (Utah 1996). Litigants should only cross-appeal "if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their opponent." *Id*. at 355 (citations omitted).

did not, the preservation rule did not apply to Van Huizen's claim of judicial partiality. *Id.* This was error.

¶19 We agree that judges are obligated to disclose facts relevant to disqualification. But when a litigant alleges undisclosed judicial bias for the first time on appeal, such a claim is not immune from preservation rules. Rather, when a litigant was truly *unable* to raise a claim – including a claim of judicial bias – at the trial level, the litigant is likely to be able to show that an exception to preservation applies. But a preservation analysis must still take place.

¶20 While the court of appeals' contrary holding is incorrect, it is understandable. The court of appeals relied on our decision in *State ex rel. D.B.*, in which we stated that a juvenile defendant had "no obligation to preserve a claim of which he received no notice." 2012 UT 65, ¶ 15, 289 P.3d 459. However, we clarified *State ex rel. D.B.* in *State v. Johnson*, 2017 UT 76, 416 P.3d 443, which was published after the court of appeals rendered its decision in this case.

¶21 In *Johnson*, we explained that "[w]hen an issue is not preserved in the trial court, but a party seeks to raise it on appeal, the party must establish the applicability of one of the[] exceptions [to preservation] to persuade an appellate court to reach that issue." 2017 UT 76, ¶ 19. There are three exceptions to preservation: exceptional circumstances, plain error, and ineffective assistance of counsel. *Id.*

¶22 We indicated in *Johnson* that *State ex rel. D.B.* should be understood as an application of the exceptional circumstances exception to preservation. *See id.* ¶ 35. "We apply [the exceptional circumstances] exception to reach an unpreserved issue where a 'rare procedural anomal[y]' has either prevented an appellant from preserving an issue or excuses a failure to do so." *Id.* ¶ 29 (second alteration in original) (citation omitted).[4] We explained that in *State*

---

[4] In *Johnson*, we explained that the presence of a rare procedural anomaly is not dispositive. Rather, it "opens the door to a deeper inquiry." 2017 UT 76, ¶ 9. Additional factors that should be considered include (a) whether the failure to address an unpreserved issue would result in manifest injustice, (b) whether there is a

(cont'd)

*ex rel. D.B.* "we recognized a rare procedural anomaly 'when the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object." *Id.* ¶ 35 (citation omitted).

¶23 This is essentially what Van Huizen claims here: that a rare procedural anomaly (the judge's failure to disclose her marriage to the Chief Criminal Deputy) prevented him from raising the issue of judicial bias in the juvenile court. However, we note that even under a proper exceptional circumstances analysis, Van Huizen has not sufficiently shown that he was unable to raise an objection to the juvenile judge's participation in his case.

¶24 Van Huizen submitted affidavits from his parents and himself stating that they did not become aware of the identity and position of the juvenile judge's spouse until after Van Huizen's conviction and after the time to appeal the bindover order had expired. But the record suffers from a significant inadequacy—there is no affidavit from Van Huizen's juvenile court counsel that he did not know of the juvenile judge's marriage to the Chief Criminal Deputy. Aside from some circumstantial indications in the record that the juvenile judge and counsel were unacquainted, Van Huizen does not support his assertion that his counsel could not have raised the issue of partiality in the juvenile court.

¶25 The State argued in the court of appeals that the juvenile judge could have made an off-the-record disclosure to Van Huizen's counsel or assumed counsel knew of the relationship. *Van Huizen*, 2017 UT App 30, ¶ 37 n.11. The court of appeals rejected this argument and, citing the Vermont Supreme Court, stated that "[i]t is not appropriate to make such an assumption." *Id.* (citing *Velardo v. Ovitt*, 2007 VT 69, ¶ 29 n.3, 933 A.2d 227) (alteration omitted).

¶26 We agree that it is the judge's obligation to recuse when it is required, regardless of whether a motion to disqualify is filed. *See* UTAH CODE JUD. CONDUCT ANN. 2.11, cmt. 2; *Reg'l Sales Agency, Inc. v. Reichert*, 830 P.2d 252, 257 n.7 (Utah 1992). And it is incumbent upon a judge, not a litigant or lawyer, to make a clear record of any

significant constitutional right or liberty interest at stake, and (c) judicial economy. *Id.* ¶ 37.

disclosure of a basis for disqualification and the parties' response to the disclosure. UTAH CODE JUD. CONDUCT 2.11(C), (D).

¶27 But this does not fill the gap in our exceptional circumstances analysis here. Van Huizen has the burden to show that he was *unable* to object to the juvenile judge's participation at the proper time. *See Johnson*, 2017 UT 76, ¶¶ 54–62 (noting that the appellant bore the "high burden" of establishing the existence of exceptional circumstances). This includes showing that his counsel was unable to raise the issue. *See id.* Van Huizen has not done so. Accordingly, the exceptional circumstances exception to preservation does not apply here.

¶28 The plain error exception also does not save Van Huizen's judicial bias claim. The State argued in the court of appeals that the court should conduct a plain error analysis because Van Huizen had not preserved this claim. But the court of appeals concluded that plain error was "not the proper framework" because the preservation rule did not apply to situations in which a party did not have the opportunity to raise an issue before appeal. *Van Huizen*, 2017 UT App 30, ¶ 50 n.15.

¶29 As discussed above, this is incorrect. But even under a proper preservation analysis, we conclude that the plain error exception would not be satisfied here. The applicability of rule 2.11 to the instant facts is not clear enough to hold that the juvenile judge made an obvious error.[5]

¶30 "To demonstrate plain error, a defendant must establish that (i) [a]n error exists; (ii) the error should have been obvious to

---

[5] This does not mean we are not concerned with the situation Van Huizen has identified. A judge must recuse herself if "the judge's impartiality might reasonably be questioned . . . ." UTAH CODE JUD. CONDUCT Rule 2.11(A). While the specific situation here has not been previously addressed, the court of appeals conducted a careful interpretation of rule 2.11 and determined that the facts at hand created an appearance of impartiality. This was not settled law during Van Huizen's juvenile court proceedings, and it is not obvious from the plain language of rule 2.11. But the court of appeals' analysis identifies legitimate concerns suggesting the rule should be reviewed and possibly clarified.

the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (alteration in original) (citation omitted) (internal quotation marks omitted). For an error to be obvious to the trial court, "the law governing the error" must be clear or "plainly settled." *Johnson*, 2017 UT 76, ¶ 21 (citing *State v. Dean*, 2004 UT 63, ¶¶ 16, 18, 95 P.3d 276) (internal quotation marks omitted).

¶31 But there is no Utah case law addressing this specific factual scenario. *See Van Huizen*, 2017 UT App 30, ¶ 28. And the plain language of rule 2.11 does not clearly encompass the judge's husband within the categories requiring disqualification.

¶32 The potentially relevant portions of rule 2.11(A) state:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> . . .
>
> (2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner of such a person is:
>
>> (a) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;
>>
>> (b) acting as a lawyer in the proceeding;
>>
>> (c) a person who has more than a de minimis interest that could be substantially affected by the proceeding . . . .

UTAH CODE JUD. CONDUCT 2.11(A). The court of appeals interpreted rule 2.11 to include the juvenile judge's husband because "he was in the direct chain of command between the County Attorney and the attorney prosecuting this case," both of whom would be fairly encompassed by rule 2.11(A)(2)(a) or (b). *Van Huizen*, 2017 UT App 30, ¶ 48. But it is not obvious from a reading of the plain language of the rule that a supervising attorney not directly involved with the case would fall into the category of persons that requires disqualification.

¶33 With regard to subsection (A)(2)(a)—concerning a situation in which a judge knows that her spouse is "a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party,"—the court of appeals noted, "[w]e are not persuaded that rule 2.11(A)(2)(a)'s language either plainly applies or plainly does not apply to the Chief Criminal Deputy." *Van Huizen*, 2017 UT App 30, ¶ 27.

¶34 We agree. The Chief Criminal Deputy was not a "party" to the proceeding. And the terms "officer, director, general partner, managing member, or trustee" suggest positions within a private entity or corporate structure.[6] We agree with the court of appeals' observation that "officer" can apply more broadly to either a government or corporate setting. *Van Huizen*, 2017 UT App 30, ¶ 25, (citing *Officer*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1015 (5th ed. 2016); *Officer*, BLACK'S LAW DICTIONARY 1257 (10th ed. 2014)). But while the term "officer" would likely include the elected County Attorney, it does not unequivocally encompass the Chief Criminal Deputy. As the court of appeals correctly noted, "it is unclear whether he was 'elected or appointed' to his position . . . as understood by the term's definition. *Van Huizen*, 2017 UT App 30, ¶ 26. So, we agree with the court of appeals and are similarly "not

---

[6] *E.g.*, *Officer*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Someone who holds an office of trust, authority, or command. In public affairs, the term refers esp. to a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function. In corporate law, the term refers esp. to a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer."); *Director*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("1. Someone who manages, guides, or orders; a chief administrator. 2. A person appointed or elected to sit on a board that manages the affairs of a corporation or other organization by electing and exercising control over its officers."); *Partner*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("1. Someone who shares or takes part with another, esp. in a venture with shared benefits and shared risks; an associate or colleague . . . . 2. One of two or more persons who jointly own and carry on a business for profit . . . .").

persuaded that the plain language of rule 2.11(A)(2)(a) answers the question presented." *Id.* ¶ 25.

¶35 Subsection 2.11(A)(2)(b) also does not clearly apply. While the Chief Criminal Deputy may have had some involvement with the case after it was bound over, it is not clear that he was "acting as a lawyer" in the juvenile court proceedings.[7] And he did not appear as counsel on the case.

¶36 Similarly, with regard to subsection (A)(2)(c), it cannot be said that the Chief Criminal Deputy had "more than a de minimis interest that could be substantially affected" by this one criminal case. There was no monetary advantage for the Chief Criminal Deputy in the result of this case. And any reputational benefit that might be achieved is speculative and difficult to measure. *See In re Inquiry Concerning a Judge*, 2003 UT 35, ¶ 13, 81 P.3d 758 (holding that a judge's relation to a member of a firm representing a party was not subject to disqualification "where no money is at issue and there is no possibility of a contingent fee arrangement"). Indeed, no matter what the result of the bindover, Van Huizen would have still been subject to a criminal trial in juvenile court and a conviction could have been obtained there. There is no evidence of the juvenile judge's husband having "more than a *de minimis* interest" in the outcome of the proceedings in juvenile court.

¶37 Under the language of any subsection of rule 2.11(A), it is not clear that the juvenile judge made an obvious error by not recusing herself or seeking a waiver. Accordingly, Van Huizen cannot overcome preservation based on plain error.

## II. ALTERNATIVE GROUNDS FOR AFFIRMANCE

¶38 Van Huizen raises two alternative grounds for reversal of the bindover decision. First, he argues that his counsel was ineffective at the bindover hearing for failing to inform the court of the 2013 amendments to the Serious Youth Offender Act and for

---

[7] The Chief Criminal Deputy's involvement was limited to "respond[ing] on behalf of the Weber County Attorney to communications from Van Huizen's current counsel when counsel substituted into the case," and "request[ing] digital copies of several proceedings, on behalf of either himself or a colleague." *Van Huizen*, 2017 UT App 30, ¶ 37.

failing to prepare and present a case for retention. Second, Van Huizen argues that the juvenile judge misinterpreted the Serious Youth Offender Act by failing to adequately consider factors for retention that existed in this case.

¶39　The State argues that we do not have jurisdiction to consider these additional grounds. Both grounds were raised and expressly not addressed in the court of appeals. *Van Huizen*, 2017 UT App 30, ¶ 12. But "[w]hen a party raises alternative grounds for affirmance, an appellate court *may affirm* the judgment appealed from on any legal ground or theory apparent on the record." *PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 34, 424 P.3d 162 (citation omitted) (internal quotation marks omitted). This holds true even when the alternative grounds were "not considered or passed on by the lower court." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citations omitted) (internal quotation marks omitted).

¶40　While we have jurisdiction and discretion to reach the alternative grounds for affirmance raised by Van Huizen, the court of appeals is in a better position to address these arguments in the first instance. For this reason, we decline to reach these arguments and remand to the court of appeals for consideration of Van Huizen's additional claims.

## CONCLUSION

¶41　Preservation rules apply to all claims. If a litigant fails to raise a claim in the trial court because the litigant does not know of the claim, or is otherwise unable to raise it, on appeal the litigant still must show that an exception to preservation applies. If circumstances truly prevented a party from raising a claim, it is likely that the party could successfully invoke an exception to preservation. But the party has the burden of making this showing.

¶42　Van Huizen did not preserve his claim that the juvenile court judge who handled his case should have recused herself because she was married to the Chief Criminal Deputy of the prosecuting attorney's office. This is not necessarily fatal to his claim. But he did not show that any exception to preservation applies, and that is fatal.

¶43　We reverse the decision of the court of appeals, reinstate Van Huizen's conviction, and remand to the court of appeals to consider the merits of Van Huizen's additional claims.

———————————