2022 UT App 48

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALVIE JARED GROVER,
Appellant.

Opinion
No. 20200187-CA
Filed April 7, 2022

Fifth District Court, St. George Department
The Honorable Eric A. Ludlow
No. 171501618

Nicolas D. Turner, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

TENNEY, Judge:

¶1      Over the course of a few hours on a single summer day in 2017, Alvie Grover punched a man in the face, stole and crashed two vehicles, led police on a high-speed chase, shot a police dog, and was shot several times by pursuing police officers.

¶2      Grover survived his injuries, and he was charged with a host of crimes stemming from these events. He ultimately pled guilty to a few of the charges as part of a plea agreement. The judge ordered the sentences to run consecutively.

¶3      Grover now appeals, raising three main arguments. First, Grover argues that the judge should have recused himself based on the judge's prior work as the county attorney. Second, Grover argues that the judge erred at sentencing by not considering a

pro se letter that Grover had submitted before sentencing. And third, Grover argues that the judge should have considered additional information that Grover had submitted to Adult Probation & Parole (AP&P) in advance of sentencing. Grover also raises ineffective assistance of counsel claims relating to these arguments.

¶4     We disagree with Grover on all fronts. We accordingly affirm.

BACKGROUND

*Grover's Crime Spree, Charges, and Plea*

¶5     On August 29, 2017, St. George Police received reports of a man throwing rocks at business windows. Officers responded and swept the area, looking for someone who fit the suspect's description.

¶6     While officers were doing so, they were flagged down by a man at a gas station. This man told officers that he had approached a person who was rummaging through his truck, but that he had backed down when the person threatened to shoot him. He said that the person then punched him in the face and stole his truck. The man told officers that there was an "AR-15 type rifle" in his truck when it was stolen.

¶7     At the same time, other officers responded to a report of a different stolen vehicle in a nearby area. When they arrived at the scene of that theft, they found the first stolen truck, crashed into a nearby trailer.

¶8     Dispatch then started receiving calls about a "vehicle driving erratically at a high rate of speed." When officers located and began pursuing this vehicle, they determined that it was the second stolen vehicle. They also learned from the second vehicle's owner that there was a handgun in the vehicle's center console.

¶9     During the pursuit, the vehicle crashed into a field behind a residential complex in Santa Clara, Utah. By this point, officers considered the driver to be "armed and dangerous."

¶10    When officers approached the now-stopped vehicle, one of the officers recognized the driver as Alvie Grover. That officer began speaking with Grover, hoping to talk him into surrendering. But Grover refused to surrender. Instead, he began opening and closing the door repeatedly while "yelling and swearing belligerently."

¶11    In the meantime, a K9 officer arrived with Tess, his K9 partner. Prompted by Grover's aggressive and erratic behavior, the K9 handler "deployed" Tess to "take control of" Grover. After Tess jumped into the vehicle, officers heard a gunshot followed by a yelp. Tess retreated to the back of the stolen vehicle, and officers then fired at Grover.

¶12    Grover was hit 19 times. After officers secured the scene and "began lifesaving measures," Grover was taken to a nearby hospital to receive treatment. Grover survived his wounds, and he was later booked into jail. As for Tess, she was life flighted to Las Vegas for specialty treatment. Tess survived, but she had to retire early because of her injuries.

¶13    Grover was charged with eight crimes stemming from these events: aggravated robbery, theft of a firearm, possession of a dangerous weapon by a restricted person, theft of property (operable motor vehicle), criminal mischief, injuring or interfering with a police service animal, failure to respond to an officer's signal to stop, and reckless driving.

¶14    Grover was assigned court-appointed counsel (Counsel), and he later accepted a plea agreement. In his agreement, Grover pled guilty to two counts of theft of an operable motor vehicle (both second degree felonies), one count of criminal mischief (a second degree felony), and one count of injuring or interfering with a police service animal (a third degree felony). At the plea

hearing, the district court ordered AP&P to prepare a presentence investigation report (PSI) and submit it to the court before the sentencing hearing.

*Sentencing*

¶15 Grover submitted two documents in advance of sentencing that are relevant to this appeal.

¶16 First, after AP&P submitted the PSI, Grover sent a pro se letter to the court (Pro Se Letter).[1] In this letter, Grover made a number of claims about the AP&P investigator who had prepared the PSI. For example, Grover accused her of having a conflict of interest because, in addition to working for AP&P, the investigator also allegedly worked for the sheriff's office that employed Tess and Tess's handler. Grover also claimed that the investigator had guarded him in the hospital and had improperly asked him "all kinds of questions" about his criminal history. Grover further claimed that the investigator had told him multiple times that he "totally deserve[d] to be gun shot."

¶17 In the Pro Se Letter, Grover also claimed that the investigator had made several errors and omissions in the PSI. He claimed that she had given him "an extra 5 points" on his criminal history score and that "given a little time [he] could supply the documentation that would lower [his] criminal history." Grover described the investigator's explanation of his offenses as being "pulp fiction at best." And Grover disagreed with how the investigator identified the crimes to which he had pled guilty.

---

1. Grover had previously sent at least three other pro se letters to the court. In the first two letters, Grover claimed that Counsel was not communicating with him and asked for "a court date" so that he could "argue" for a new court-appointed attorney. In a third letter, Grover described his medical treatment and the pain his wounds were causing him.

¶18    Second, at the outset of the sentencing hearing the following month, Counsel informed the court that Grover had submitted a 35-page packet (the Supplemental Documents) to AP&P that included Grover's medical records and "his version of things." But when Counsel expressed uncertainty about whether the Supplemental Documents had been forwarded to the court, the court responded that it had "not seen" them. Counsel then argued that Grover had a "right" to have the court consider them. When Counsel said that he wasn't sure if the court wanted to "continue the matter again," the court responded, "I don't."

¶19    Turning to his sentencing arguments, Counsel asked the court to order concurrent sentences, not consecutive sentences. Among others, Counsel pointed out that Grover's "last felony offense before this incident was 1997, 22 years ago. Before that his prior felony was 35 years ago in 1984."

¶20    Grover made a statement in allocution. He started off by thanking Counsel "for his efforts" and praising Counsel for doing "an excellent job." Grover then talked about the Supplemental Documents, telling the court that those documents explained "all these different theories and why it transpired and everything like that." Grover also described his injuries, and he acknowledged that what had happened was "completely [his] fault."

¶21    When Grover was done, the K9 handler gave a statement "on behalf of" Tess. He explained how Grover's bullet had gone through Tess's jaw and into her neck, where it is still lodged. He also described how she survived only because a specialist was able to "manipulate the bone structure in her neck and put the bones back in place." He said that Tess should have worked for "probably five more years" but had to retire early, and he said that she "suffers" because she doesn't understand why she can't go to work with him. The K9 handler further described the event from his perspective. He explained how he still struggled

emotionally and mentally because shooting somebody was not something he "ever wanted to do in [his] career."

¶22 The prosecutor then asked the court to order consecutive sentences. He emphasized that Grover had stolen two vehicles, led officers on a high-speed chase, and "forced the officers to use deadly force."

¶23 After both sides concluded, the court sentenced Grover to three prison terms of one-to-fifteen years for the second degree felonies. For the third degree felony, the court sentenced Grover to a prison term of up to five years. The court ordered all of the sentences to run consecutively.

¶24 Explaining this decision, the court said that this was "not even a close case." The court said it thought the sentencing decision was an "easy" one because Grover had committed a "heinous" crime and had a criminal history that went "back almost 40 years." When describing Grover's criminal history, the court referenced a "sex offense in 1987."[2]

¶25 The court also listed several aggravating factors that influenced its sentencing decision, including "substantial monetary loss," "substantial physical or psychological injury to the victim," the harm to Tess "characterized by extreme cruelty or depravity," the fact that "the offense involved two or more victims," and the fact that Grover is "a repeat offender."

¶26 Grover timely appealed.

---

2. From the record, it appears that the court's reference to a "1987" sex offense was a misstatement. Grover's prior conviction for forcible sex abuse—which Counsel had previously acknowledged—was entered in 1997, not 1987.

## ISSUES AND STANDARDS OF REVIEW

¶27 Grover raises a number of issues on appeal. They essentially fall into three categories.

¶28 First, Grover argues that the sentencing judge plainly erred by not recusing himself sua sponte. Relatedly and alternatively, Grover argues that Counsel was ineffective for not filing a recusal motion.

¶29 Second, Grover argues that the district court plainly erred by not considering the Pro Se Letter. Relatedly and alternatively, Grover argues that Counsel was ineffective for not making the arguments contained in the Pro Se Letter.

¶30 Third, Grover takes issue with how the district court and Counsel addressed the Supplemental Documents. Specifically, he argues that (i) AP&P was legally required to attach those documents to the PSI, (ii) the court abused its discretion by not continuing the sentencing hearing so that it could review the Supplemental Documents, (iii) Counsel was ineffective for "improperly remain[ing] silent" when the court declined to continue Grover's sentencing, and (iv) Counsel was ineffective for not otherwise ensuring that the court reviewed the documents.

¶31 To succeed on his plain error claim, Grover must "show the existence of a harmful error that should have been obvious to the district court." *State v. Waterfield*, 2014 UT App 67, ¶ 18, 322 P.3d 1194 (quotation simplified). On the ineffective assistance claims, because those are "raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [Grover] was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified). Finally, "this court reviews decisions involving continuances of sentencing only for abuse of discretion." *State v. Sharp*, 2021 UT App 90, ¶ 23, 498 P.3d 9 (quotation simplified).

ANALYSIS

I. Recusal

¶32    Grover was sentenced by Judge Eric Ludlow. On appeal, Grover argues that Judge Ludlow was required to recuse himself because he was the Washington County Attorney in 1997 when Grover was prosecuted by that office and because Judge Ludlow then relied on that conviction as part of his justification for the sentence in this case.[3] Grover acknowledges that he did not raise this issue below, so he argues that Judge Ludlow plainly erred by not recusing himself sua sponte. *See State v. Van Huizen*, 2019 UT 01, ¶ 19, 435 P.3d 202 (holding that claims of judicial bias are "not immune from preservation rules"); *State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (explaining that plain error is an exception to the preservation requirement).

¶33    To show plain error, Grover "must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *Van Huizen*, 2019 UT 01, ¶ 30 (quotation simplified). "For an error to be obvious to the trial court, the law governing the error must be clear or plainly settled." *Id.* (quotation simplified); *see also State v. Marquina*, 2020 UT 66, ¶ 30, 478 P.3d 37 ("An error is obvious if from a review of the record, the appellate court is led to the conclusion that given the

---

3. The State does not contest Grover's assertion that Judge Ludlow was the Washington County Attorney when Grover was prosecuted in 1997, and we have no reason to do so either. *See Judges' Biographies*, Utah Courts, https://www.utcourts.gov/judgesbios/showGallery.asp?ct_type=D&dist=5 [https://perma.cc/JJB8-75RU] (stating that Judge Ludlow was the Washington County Attorney from 1991 through 2003).

circumstances, the trial court should have been aware that an error was being committed at the time." (Quotation simplified.)).

A.     Applicable Law

¶34    As an initial matter, the parties disagree about what source of law controls this issue. Grover argues that his conviction must be reversed if Judge Ludlow was required to recuse under either the Due Process Clause of the Fourteenth Amendment or rule 2.11(A) of the Utah Code of Judicial Conduct. By contrast, the State argues that the judicial conduct rules alone are not enough to entitle Grover to relief, but that "a violation of the Due Process Clause" "is required for reversal."

¶35    The parties' arguments largely turn on competing interpretations of *State v. Munguia*, 2011 UT 5, 253 P.3d 1082. As the State points out, the supreme court there concluded that "even if [the defendant] were to show" that the trial judge had "engaged in conduct worthy of sanctions under the Code of Judicial Conduct, he would still need to show that the conduct violated his constitutional rights in such a way that merits reversal of his sentence." *Id.* ¶ 16. Taken at face value, this passage does suggest that reversal of a conviction on appeal is only warranted if the judge's conduct violated the constitutional standard.

¶36    But that's not the only plausible way to read this passage. The defendant in *Munguia* argued that the trial judge was required to recuse himself under the "state and federal constitutions." *Id.* ¶ 15. And yet in his brief, the defendant did "not further develop what kind of judicial conduct might constitute a violation of his due process rights." *Id.* ¶ 16. Instead, he "discusse[d] when recusal is appropriate under the Utah Code of Judicial Conduct and Rules of Professional Conduct." *Id.* From this, the supreme court held that the defendant's arguments had "incorrectly equate[d] judicial conduct that would violate a criminal defendant's constitutional rights with judicial conduct that might lead to sanctions for a judge." *Id.*

And given this, the passage the State relies on here was arguably faulting the defendant in *Munguia* for insufficiently supporting the constitutional argument that he had chosen to make—i.e., for incorrectly assuming that the constitutional and canonical standards were coterminous.[4]

¶37    Yet there's at least some reason to believe that a party can obtain reversal of a judgment based on a violation of rule 2.11(A) alone. The "provisions of the Code of Judicial Conduct . . . have legal force." *American Rural Cellular, Inc. v. Systems Commc'n Corp.*, 939 P.2d 185, 195 n.12 (Utah Ct. App. 1997). And rule 2.11(A) in particular uses the mandatory "shall" when describing a judge's obligation to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Utah Code Jud. Conduct R. 2.11(A); *see also Cheek v. Clay Bulloch Constr. Inc.*, 2016 UT App 227, ¶ 25, 387 P.3d 611 (holding that recusal can be "required under provisions of the Code of Judicial Conduct").

¶38    Although judges are obligated to recuse if their impartiality might reasonably be questioned, the question here concerns the next step—whether an appellate court can reverse a judgment after the fact based on a judge's failure to recuse when required by this rule. In *Regional Sales Agency, Inc. v. Reichert*, 830 P.2d 252, 254–58 (Utah 1992), the supreme court vacated one of our decisions after concluding that one of the judges who sat on the panel should have recused herself under the then-existing rule 3(C)(1)(d) of the Utah Code of Judicial Conduct, which likewise turned on whether the judge's "impartiality might reasonably be questioned." Notably, the supreme court never mentioned any separate violation of any constitutional standard, instead reversing solely because of the rule violation. *Id.* at 257 n.7. And the court did so even though two dissenting justices argued that the judicial rules "do not have force of law" and

---

4. Unlike the defendant in *Munguia*, Grover separately requested relief under both sources of authority.

cannot, alone, support the reversal of a decision. *Id.* at 260 (Howe, A.C.J., dissenting).[5] Further, in a more recent decision that postdates *Munguia*, the supreme court rejected a criminal defendant's challenge to his conviction that was based on an alleged violation of "rule 2.11 of the Utah Code of Judicial Conduct" (which is the same rule that Grover relies on here). *Van Huizen*, 2019 UT 01, ¶ 12. The supreme court did not assert that the judicial conduct rules cannot provide the basis for vacating a conviction on appeal. Instead, the court analyzed the claim on its own terms, ultimately rejecting the assertion that the judge's participation in the case had violated "the plain language of rule 2.11." *Id.* ¶ 31; *see also id.* ¶ 37.

¶39 We're accordingly left with some apparent tension in the cases about the appropriate remedy for a violation of the judicial conduct rules—i.e., whether a party can obtain reversal on appeal based on a violation of these rules alone. But we ultimately need not resolve this tension in this case. Even if Grover is correct that a party can obtain reversal based on either a rule violation or a violation of the constitutional standard, Grover has not shown that either standard was violated here.

B.     Due Process Clause

¶40 We first consider Grover's claim that the Due Process Clause plainly required Judge Ludlow to recuse himself based on his past position as the Washington County Attorney when Grover was prosecuted by that office. In our view, the Due Process Clause didn't plainly require recusal in this circumstance.

¶41 "Due process guarantees an absence of actual bias on the part of the judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)

---

5. *Regional Sales Agency* was later limited on other grounds that are not relevant to the question before us. *See In re Inquiry Concerning a Judge*, 2003 UT 35, ¶¶ 12–15, 81 P.3d 758.

(quotation simplified). In *Williams*, the Supreme Court held that "there is an impermissible risk of actual bias when a judge earlier had *significant, personal involvement* as a prosecutor in a *critical decision* regarding the defendant's case." *Id.* (emphases added). In that case, for example, a district attorney had approved the decision to seek the death penalty against a defendant. *Id.* at 4. When that district attorney was later elevated to the state supreme court, he voted to deny that same prisoner relief from execution in that same case. *Id.* The Supreme Court held that this created "an impermissible risk of actual bias." *Id.* at 8, 11–14.

¶42 The circumstances here are far different. Judge Ludlow's alleged prior involvement was not in the same case that is now at issue. Rather, Judge Ludlow was the county attorney when Grover was previously prosecuted, but that prosecution was for a separate offense entirely. In addition, even with respect to that earlier case, Grover points to nothing showing that Judge Ludlow had any "significant, personal involvement" in it at all. *Id.* at 8.

¶43 Even so, Grover points out that Judge Ludlow relied on that prior prosecution as part of his criminal history considerations when sentencing Grover in this case. But Grover points to no authority, and we're aware of none, that establishes that it is a due process violation for a judge to rely on a past conviction during sentencing if that conviction was obtained during the judge's prior tenure as the county attorney. This precedential gap matters because, again, plain error requires obviousness, and obviousness requires that the "law governing the error must be clear or plainly settled." *Van Huizen*, 2019 UT 01, ¶ 30 (quotation simplified). Our courts have thus held that "an error is not obvious if there is no settled appellate law to guide the trial court." *State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 (quotation simplified).

¶44 Absent such authority, we cannot conclude that Judge Ludlow "should have been aware that an error was being

committed at the time," *Marquina*, 2020 UT 66, ¶ 30 (quotation simplified), let alone that there was even any error at all. Given this, Grover's claim that there was an obvious due process violation fails.

C.     Utah Code of Judicial Conduct Rule 2.11(A)

¶45     Grover next argues that Judge Ludlow was plainly required to recuse himself under rule 2.11(A) of the Utah Code of Judicial Conduct. We conclude that recusal was not plainly required under this rule.

¶46     Rule 2.11(A) states that a "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Utah Code Jud. Conduct R. 2.11(A). It then provides "an illustrative, but not exhaustive, list of disqualifying circumstances." *Blackmore v. L & D Dev. Inc.*, 2016 UT App 198, ¶ 27, 382 P.3d 655.

¶47     None of the listed examples are directly implicated here. The closest is rule 2.11(A)(6)(b), which applies when the judge "served in governmental employment, and in such capacity participated *personally and substantially* as a lawyer or public official concerning *the proceeding*." Utah Code Jud. Conduct R. 2.11(A)(6)(b) (emphases added). But unlike the scenario contemplated by that rule, Judge Ludlow was not involved in "the proceeding" at issue in this case; rather, he's alleged to have been involved in an entirely separate past prosecution. And even on that front, Grover again points to nothing showing that Judge Ludlow participated "personally and substantially" in that prior case. Rule 2.11(A)(6)(b) is therefore inapplicable.

¶48     Moreover, many of the other examples listed in rule 2.11(A) likewise contemplate scenarios where the judge has an interest or involvement in the *current* case. *See, e.g.*, Utah Code Jud. Conduct R. 2.11(A)(6)(a) (stating that a judge "shall disqualify himself" if he "served as a lawyer in the matter in controversy"). Grover himself thus appropriately admits that his

situation "does not fit squarely into the list of circumstances contained in Rule 2.11(A)."

¶49    Grover nevertheless points out that the examples listed in rule 2.11(A) are not exhaustive. Fair enough. But again, to demonstrate plain error, Grover must demonstrate that Judge Ludlow committed an obvious error, and an error can only be obvious if "the law governing the error" is "clear or plainly settled." *Van Huizen*, 2019 UT 01, ¶ 30 (quotation simplified).

¶50    Grover has not pointed to any law that clearly or plainly establishes that rule 2.11(A) requires recusal if a sentencing judge served as the county attorney when a defendant was prosecuted for an entirely different offense. Instead, he only claims that his scenario is "similar" to those listed in rule 2.11(A).

¶51    We have some doubt about whether any of the listed examples are in fact similar. But in any event, they're not similar enough to have obviously established that Judge Ludlow was required to recuse himself. Indeed, Grover himself acknowledges that, "[i]n other states, it has been held that a judge previously prosecuting a defendant in a different matter is insufficient grounds for recusal." And from our review of the cases, this concession is warranted—other courts have commonly rejected recusal claims raised under similar rules in similar situations. *See, e.g.*, *Brown v. State*, 424 S.W.3d 288, 292 (Ark. 2012) ("[A] judge need not recuse because that judge had previously prosecuted the defendant for a separate crime that was to be used for sentence-enhancement purposes."); *Leverette v. State*, 732 S.E.2d 255, 257 (Ga. 2012) ("However, the fact that a judge in the judge's previous capacity as district attorney prosecuted the defendant on *another* charge not currently pending before the judge, is not, standing alone, a ground for disqualification." (Emphasis in original.)); *see also State v. Connolly*, 930 So. 2d 951, 954 (La. 2006); *State v. Marden*, 673 A.2d 1304, 1308 (Me. 1996); *Commonwealth v. O'Shea*, 567 A.2d 1023, 1034 (Pa. 1989); *Smith v. State*, 357 S.W.3d 322, 340–41 (Tenn. 2011).

¶52    Given the lack of an applicable Utah rule, as well as the weight of authority from other states rejecting the same kind of claim that Grover now makes, we conclude that Grover has not established that Judge Ludlow made an obvious error by not recusing himself. *See Van Huizen*, 2019 UT 01, ¶ 37. His claim thus fails.[6]

## II. Pro Se Letter

¶53    Grover next argues that the district court erred by not considering the Pro Se Letter, wherein Grover detailed his disagreements with the PSI. Relatedly and alternatively, Grover argues that Counsel was ineffective for not raising the objections Grover made in the Pro Se Letter at sentencing. We address each argument in turn.

A.    The district court was not required to consider the Pro Se Letter.

¶54    Grover first argues that the district court was required to consider his Pro Se Letter under Utah Code section 77-18-1(6)(a). We disagree.

¶55    A defendant is "not entitled to a hybrid representation" in a criminal case. *State v. Finlayson*, 2014 UT App 282, ¶ 21 n.10, 362 P.3d 926 (quotation simplified). Hybrid representation is disfavored because it "creates confusion as to who is the ultimate decision-maker." *State v. Hackett*, 172 N.E.3d 75, 78 (Ohio 2020). This confusion "may lead to ethical concerns for

---

6. In his brief, Grover also argues that Counsel "was ineffective for failing to file a recusal motion on Grover's behalf." But in light of our resolution above, Grover's related ineffective assistance claim necessarily fails. *See State v. Munguia*, 2011 UT 5, ¶ 19, 253 P.3d 1082 ("Because Judge Kouris was not required to recuse himself, Mr. Munguia's counsel was also not ineffective when she did not request recusal.").

counsel if there is disagreement over trial strategy," and it also "presents courtroom-management challenges for the trial judge." *Id.*

¶56 As a result, "when a defendant is represented by counsel, he generally has no authority to file pro se motions, and the court should not consider them." *Finlayson*, 2014 UT App 282, ¶ 21 n.10 (quotation simplified). "The only exception to this rule is that a defendant may file a pro se motion to disqualify his appointed counsel." *State v. Hall*, 2013 UT App 4, ¶ 27 n.8, 294 P.3d 632. But in other scenarios, a court does not err when it declines to consider the pro se filings of a defendant who is represented by counsel. *See, e.g.*, *State v. Navarro*, 2010 UT App 302, ¶¶ 3–4, 243 P.3d 519.

¶57 Here, Grover was represented by Counsel when he sent the Pro Se Letter. As a result, he was not entitled to hybrid representation, and the court was not required to consider the Pro Se Letter.[7]

---

7. We understand Grover's argument to be that the court was required to consider the Pro Se Letter as a formal challenge to the PSI under the procedures set forth in the controlling statute. This is why we have concluded that a represented defendant must make such a challenge through counsel.

Even when represented by counsel, however, a defendant does, of course, have the right to "personally" address the court in allocution before sentencing. *State v. Kelson*, 2015 UT App 91, ¶ 7, 348 P.3d 373. But Grover has not argued in his brief that this letter should have been considered a form of written allocution, let alone that the allocution right allows a defendant to bypass the ordinary prohibition on hybrid representation with respect to pre-sentencing motions. In any event, even if Grover has impliedly made such an argument, our supreme court has held that "so long as the [sentencing] hearing was held in [the] defendant's presence and [the] defendant had an opportunity to

(continued…)

B.      Counsel was not ineffective for not raising the arguments Grover made in the Pro Se Letter.

¶58     Grover next argues that Counsel was constitutionally ineffective for not raising the arguments that Grover made in the Pro Se Letter. We conclude otherwise.

¶59     To succeed on this claim, Grover must show two things. First, he "must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires him to establish "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, Grover "must show that the deficient performance prejudiced" him. *Id.* at 687. This requires Grover to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697; *see also Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182 ("Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [the defendant's] claims under either prong."). Here, we conclude that Grover's claim fails for lack of prejudice.

¶60     Grover's Pro Se Letter advanced two key claims: first, that the PSI had misstated Grover's criminal history; and second, that the investigator who prepared the PSI had a conflict of interest and harbored personal bias against him.

---

(…continued)

speak," the allocution right has been satisfied. *State v. Rodrigues*, 2009 UT 62, ¶ 40, 218 P.3d 610 (quotation simplified); *accord State v. Tingey*, 2014 UT App 228, ¶ 9, 336 P.3d 608. As noted, Grover personally appeared at sentencing and actively spoke to the court. Any such claim would therefore fail.

¶61  In his brief, however, Grover does not identify any particular error regarding his criminal history, so we have no basis for concluding that there was prejudice in this regard.

¶62  And while it does appear that Counsel did not bring the alleged conflict of interest by the AP&P investigator to the court's attention at sentencing, we see no probability that doing so would have changed the court's sentencing decision.

¶63  By the time of sentencing, the facts of this case were largely undisputed. The court was informed that Grover had stolen two vehicles, led police on a high-speed chase, refused to surrender, shot a police dog, and been shot himself. Grover does not dispute any of this on appeal.

¶64  Both before and at sentencing, Grover had the opportunity to provide any additional details about these events and ask for leniency. The PSI, for example, included Grover's statement that he felt remorseful. Then, at sentencing, Grover allocuted. And when he did, Grover personally explained what happened during the events in question, told the court about the injuries he suffered, and, critically, again expressed remorse. He said that the officers who were "forced" to shoot him were the "most victimized" by the situation and that the shooting was "completely [his] fault." Grover's Counsel also made arguments on Grover's behalf at sentencing, expressing his view that Grover had "sober[ed] up" and was "start[ing] to realize . . . the consequences of his actions," as well as arguing that concurrent sentences were sufficient because Grover would still "do extra time for each Count."

¶65  But the court heard contrary information and arguments too. The PSI included the investigator's observation that Grover "showed little to no emotion or empathy toward the situation or the victims involved," as well as her claim that Grover "argue[d]" with her when she told him that AP&P would be recommending prison and not probation. At sentencing, the court heard from the K9 handler, who described both his own

struggles stemming from the incident and the pain and suffering of the police dog that Grover shot. And the court heard arguments from the prosecutor, who emphasized the nature of the crime and the harm they caused.

¶66    Having considered all this, the court expressed its view that this was "not even a close case" and that the sentencing decision before it was an "easy" one. The court based this on the "heinous" nature of these offenses, which included "substantial monetary loss," the "substantial physical or psychological injury to the victim," and the harm to the police dog. It also based this on Grover's undisputed criminal history.

¶67    From all this, we don't believe that there's any reasonable probability that Grover's sentence would have been different if Counsel had informed the court of Grover's complaints about either his criminal history or the AP&P investigator's alleged conflict of interest. Grover's ineffective assistance claim therefore fails for lack of prejudice.

### III. Supplemental Documents

¶68    Grover makes a number of claims relating to the Supplemental Documents—i.e., the 35-page packet that he allegedly submitted to AP&P before the sentencing hearing.[8]

¶69    First, Grover claims that AP&P was required to attach the Supplemental Documents to the PSI. But Grover points to no authority establishing that AP&P is required to attach a defendant's submissions to the PSI. And to the apparent

---

8. This packet is not currently in the record, and Grover has not asked for a remand to allow the court to supplement the record to make findings about what was in it. *See* Utah R. App. P. 23B (allowing a defendant to move "to remand for findings necessary to determination of ineffective assistance of counsel claim").

contrary, the statutory provision that details what a "presentence investigation report shall include" does not require AP&P to attach any submissions from the defendant. *See* Utah Code Ann. § 77-18-1(5)(b) (LexisNexis 2017).

¶70    Second, Grover claims he was "denied the opportunity to present evidence concerning the appropriate sentence" because the court did not grant him a continuance of the sentencing hearing to allow it to review the Supplemental Documents.

¶71    But a "district court's decision regarding whether to continue a matter is generally reviewed for abuse of discretion." *State v. Sharp*, 2021 UT App 90, ¶ 22, 498 P.3d 9. Here, Grover received the PSI at least three weeks before sentencing. Once he did, he would have seen that the Supplemental Documents were not attached, thereby giving him time to submit them to the court through Counsel before sentencing. He did not, so we see no abuse of discretion in the court's decision not to continue the hearing when this was brought to the court's attention at sentencing.

¶72    Third and relatedly, Grover argues that Counsel was ineffective for "improperly remain[ing] silent" when the court declined to continue the sentencing hearing to allow it to review the Supplemental Documents. Though somewhat unclear, we understand this to be an argument that Counsel should have objected more forcefully to the court's decision not to continue the matter.

¶73    But the Constitution does not require counsel to request a continuance when counsel "could have reasonably concluded that the trial court would not continue the proceedings." *State v. Gunter*, 2013 UT App 140, ¶ 35, 304 P.3d 866; *see also State v. Kelly*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel."). Here, Counsel did tacitly broach the subject of a possible continuance. But when he did, the court said that it did not want to continue sentencing. From this alone, Counsel had a reasonable basis for

not pushing the matter further. *See Gunter*, 2013 UT App 140, ¶ 35.

¶74    In any event, Grover has also failed to establish that there is a reasonable probability that "the result of the proceeding would have been different" if Counsel had more forcefully asked for a continuance. *Strickland*, 466 U.S. at 694. As explained, the court allowed both Grover and Counsel to speak at sentencing. Grover took that opportunity, and when he did, he personally informed the court about the nature of his injuries and accepted responsibility for his crimes—which are the very things he claims to have done in the Supplemental Documents. We accordingly see no basis for concluding that Grover would have received "a more favorable sentence" if Counsel had performed differently in this regard (or, instead, if the court somehow abused its discretion by not granting a continuance in the first instance). *Sharp*, 2021 UT App 90, ¶ 45.

¶75    Finally, Grover argues that Counsel was ineffective for not ensuring that the court "admitted or reviewed" the Supplemental Documents—presumably by submitting them himself.

¶76    Like all defendants who "raise[] a claim that trial counsel was ineffective," Grover "bears the burden of assuring that the record is adequate," and any "ambiguities or deficiencies" in the record "will be construed in favor of a finding that counsel performed effectively." *State v. Litherland*, 2000 UT 76, ¶¶ 16–17, 12 P.3d 92. As noted, those Supplemental Documents are not in our record. We must therefore construe the record's inadequacy "in favor of a finding that counsel performed effectively." *Id.* ¶ 17. And without the Supplemental Documents, we also cannot conclude "that there is a reasonable probability that" Grover's sentence "would have been different." *Strickland*, 466 U.S. at 694; *see also State v. Littlejohn*, 2021 UT App 73, ¶ 37, 496 P.3d 726. In any event, for the additional reasons explained above, it appears that the court was apprised of the arguments Grover wished to make, and yet it still based its decision on the largely

uncontroverted details regarding Grover's crimes, their impact, and Grover's criminal history.

¶77   For all these reasons, Grover has not shown any reversible error with regard to the Supplemental Documents.

CONCLUSION

¶78   Grover has not established that Judge Ludlow plainly erred by not recusing himself, nor has he shown that Counsel was ineffective for failing to file a recusal motion. Because Grover was represented by Counsel, the court was not required to consider the Pro Se Letter, and we see no basis for concluding that Grover was prejudiced by any failure by Counsel to advance the arguments contained therein. Finally, we see no reversible error with respect to either the court's decisions regarding, or Counsel's handling of, the Supplemental Documents.

¶79   Affirmed.

————————