**2018 UT App 182**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BILLY LEE ROHWEDDER,
Appellant.

Opinion
No. 20150357-CA
Filed September 20, 2018

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 111909523

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes, Jennifer Paisner Williams, and Mark
C. Field, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion. JUDGE JILL M.
POHLMAN concurred. JUDGE DAVID N. MORTENSEN concurred,
with opinion.

ORME, Judge:

¶1     Defendant Billy Lee Rohwedder appeals his convictions
for theft by receiving stolen property, failure to respond to an
officer's signal to stop, and failure to signal. Defendant argues
that his right to a speedy trial was violated, that he was
prejudiced by the trial court's requirement that he wear leg
restraints during trial, and that he was denied his rights both to
self-representation and the effective assistance of counsel. We
affirm.

BACKGROUND[1]

¶2    One evening in December 2011, an officer on patrol saw Defendant driving a vehicle that had been reported stolen. The officer followed Defendant and activated his lights and siren, signaling Defendant to pull over. Defendant refused to stop and instead accelerated to a high speed. The officer, unable to safely pursue Defendant, initiated a neighborhood containment plan to prevent Defendant from getting away. As the officer began reconnoitering the neighborhood, he observed the stolen car abandoned on the road with the driver's door open and the engine still running. Soon after, another officer found Defendant half a block from the abandoned car, sweating and out of breath. A third officer with a dog that had tracked Defendant from the abandoned car also approached Defendant. Defendant was arrested and charged with the previously named offenses.

¶3    In January 2014, a jury convicted Defendant of all three charges. On appeal, we summarily reversed his convictions because the trial court had failed to address Defendant's multiple requests to represent himself. On remand, Defendant again sought to represent himself, but he insisted that he would not waive his right to the assistance of counsel unless the trial court either granted him the use of a law library or the assistance of standby counsel. The trial court granted his request for the assistance of standby counsel. The court clarified that Defendant would be representing himself and was responsible for his own defense. Standby counsel's role was limited to assisting Defendant in securing witnesses and in accessing relevant legal materials. Shortly before trial, Defendant complained that

---

1. When reviewing an appeal from a jury verdict, "we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly." *State v. Shepherd*, 1999 UT App 305, ¶ 2, 989 P.2d 503 (citation and internal quotation marks omitted).

standby counsel was not serving his interests and that he did not believe he was "being properly represented." He also complained that standby counsel was not providing him with the information or evidence he requested and had failed to help him locate the witnesses he wished to subpoena.

¶4    Also during pretrial hearings, Defendant raised concerns about wearing leg restraints in view of the jury. Defendant proposed that he wear a taser vest as an alternative to leg restraints. However, the bailiff explained to the court that courtroom security procedures do not allow criminal defendants to wear only a taser vest. Rather, the protocol calls for such vests to be worn in addition to leg restraints. The court agreed that Defendant could not only wear a taser vest. To allay Defendant's concerns of prejudice, the trial court suggested that both Defendant and the prosecutor remain seated during trial. Defendant rejected this suggestion, preferring to walk about the courtroom as best he could in leg restraints. Defendant's case on remand proceeded expeditiously to trial with the exception of one continuance—at Defendant's request—to locate additional evidence and witnesses. After a two-day trial in April 2015, a jury convicted Defendant of all three charges. Defendant again appeals, and we affirm.

ISSUES AND STANDARDS OF REVIEW

¶5    Defendant raises three issues on appeal. First, he argues that the trial court denied his constitutional right to a speedy trial. "We review the issue of whether a defendant was deprived of his right to a speedy trial for correctness." *State v. Hawkins*, 2016 UT App 9, ¶ 68, 366 P.3d 884. Next, Defendant argues that the court unfairly prejudiced him by requiring him to wear leg restraints in view of the jury. Whether a defendant was denied his constitutional rights to a fair trial and the presumption of innocence is reviewed for correctness. *State v. Madsen*, 2002 UT App 345, ¶ 4, 57 P.3d 1134. And finally, Defendant argues that the trial court violated his rights to self-representation and to the

effective assistance of counsel. We consider these claims, "raised for the first time on appeal," as "present[ing] a question of law," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162, which we evaluate for correctness, *State v. Pedockie*, 2006 UT 28, ¶ 23, 137 P.3d 716.

ANALYSIS

I. Trial Delay

¶6    The Sixth Amendment to the United States Constitution guarantees a defendant the right to a speedy trial. U.S. Const. amend. VI. In determining whether a criminal defendant has been deprived of the right to a speedy trial, we consider four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). But the length of delay is the "triggering mechanism," and "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Whether a delay is presumptively prejudicial depends on "the peculiar circumstances of the case," *id.* at 530–31, because for "serious, more complex crimes, a greater period of delay will be tolerated," *State v. Cornejo*, 2006 UT App 215, ¶ 27, 138 P.3d 97 (brackets, citation, and internal quotation marks omitted). Typically, courts view "delays approaching one year [as] presumptively prejudicial." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

¶7    Here, Defendant points to the time from when he was originally charged right up until his second trial, which exceeded three years. He argues that this delay is presumptively prejudicial. But in his first appeal, Defendant asked this court for a new trial, which he received. In cases of retrial, other courts have declined to include all the time that has passed from the original charge to the second trial, considering only the time period between the appellate mandate reversing a conviction

and the retrial. *See, e.g., Icgoren v. State*, 653 A.2d 972, 978 (Md. Ct. Spec. App. 1995); *Mitchell v. State*, 572 So. 2d 865, 870–71 (Miss. 1990); *State v. Kula*, 579 N.W.2d 541, 546 (Neb. 1998); *Soffar v. State*, No. AP-75,363, 2009 WL 3839012, at *39 (Tex. Crim. App. Nov. 18, 2009) (per curiam). Given that "[i]t has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events" without running afoul of the Sixth Amendment's right to a speedy trial, *United States v. Ewell*, 383 U.S. 116, 121 (1966), we are inclined to follow the lead of those courts. Defendant's case returned to the trial court on November 12, 2014, and the first day of his retrial was April 7, 2015. The time between these two dates was a period of only 146 days, which Defendant has not shown is presumptively prejudicial under the circumstances of this case. *See Larson*, 627 F.3d at 1208. *Cf. Cornejo*, 2006 UT App 215, ¶ 27 (concluding that 315 days was "potentially, but not necessarily, prejudicial") (citation and internal quotation marks omitted).

¶8 Because Defendant's claim of a speedy trial violation falls short of being even "presumptively prejudicial," we have no occasion to consider the other *Barker* factors. We therefore conclude that the trial court did not deprive Defendant of his right to a speedy trial.

## II. Leg Restraints

¶9 Defendant contends that the trial court unfairly prejudiced him by requiring him to wear leg restraints in the presence of the jury. "It is well established that a principal ingredient of due process is that every criminal defendant is entitled to a fair and impartial trial." *State v. Mitchell*, 824 P.2d 469, 473 (Utah Ct. App. 1991) (brackets, citation, and internal quotation marks omitted). It can be "inherently prejudicial" to "visibly shackl[e] a defendant" because "it suggests to the minds of jurors that he is guilty." *State v. Madsen*, 2002 UT App 345, ¶ 8, 57 P.3d 1134. Still, a trial court may physically restrain a criminal

defendant "to prevent an escape, resort to violence, or disruption of the trial." *Mitchell*, 824 P.2d at 473.

¶10  The question of whether Defendant actually presented any of those risks is not at issue in this appeal. Instead, Defendant argues that there were ways the trial court could have minimized the risk of prejudice even if it was necessary to restrain him. Defendant was restrained using shackles that would lock "if someone stands up abruptly or moves." To ensure the jury could not see Defendant's leg restraints, the trial court offered to have everyone at counsel table remain seated, including the prosecutor, and for curtains to be hung from the tables to conceal everyone's legs. But Defendant rejected the trial court's offer, insisting confining everyone to counsel table would signal the jury that Defendant was shackled. And he wished to move about freely during trial. He therefore made the choice to forgo the everyone-remain-seated option and preserve his ability to get up and move around during trial.

¶11  To conclude that the use of visible restraints was inherently prejudicial, it has to be clear that "the trial court created [the] inherently prejudicial situation." *State v. Daniels*, 2002 UT 2, ¶ 20, 40 P.3d 611. Had Defendant accepted the trial court's offer to have everyone at counsel table remain seated, the jury would have been none the wiser that he was physically restrained.[2] Defendant therefore created his own prejudicial situation, and accordingly, we conclude that the trial court did not err in requiring Defendant to wear leg restraints during his trial.

---

2. We reject Defendant's argument that if everyone at counsel table remained seated, the jury would immediately guess that the root cause for this arrangement was Defendant's being restrained as a security risk, as opposed to there being some other explanation, such as a physical disability or a judicial preference for informality in the courtroom.

### III. Standby Counsel

¶12    Defendant contends, seemingly inconsistently, that both his right to self-representation and his right to the effective assistance of counsel were violated when "his standby counsel failed to . . . provide him access to relevant legal materials [and] . . . subpoena witnesses." There are two mutually exclusive rights guaranteed by the Sixth Amendment: the right to the assistance of counsel and the right to self-representation. *State v. Bakalov*, 1999 UT 45, ¶ 15, 979 P.2d 799.

¶13    When a criminal defendant invokes the right to self-representation, he waives his right to the assistance of counsel. *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987). Before allowing a criminal defendant to represent himself, a trial court must ensure that the "waiver is a voluntary one which is knowingly and intelligently made" by making the defendant "aware of the dangers and disadvantages of self-representation." *Id.* (citation and internal quotation marks omitted). Once "[t]he choice to represent oneself" is made, "a pro se criminal defendant relinquishes many of the traditional benefits associated with the right to counsel," including "full access to legal materials, when the defendant remains in custody pending trial." *State v. Drobel*, 815 P.2d 724, 736 (Utah Ct. App. 1991) (citation and internal quotation marks omitted).

¶14    Defendant sought to represent himself, but he refused, as he put it, to "sign[] away imperative rights" absent assurances he would have access to a law library or the assistance of "back-up counsel." The trial court allowed him to represent himself and also made standby counsel available to him. But the court clarified that Defendant would be "primarily responsible for things" and "responsible for being able to comply with all the expectations." While Defendant does not dispute that his waiver of the right to counsel was knowing and voluntary, he denies that he waived the right to the assistance of counsel in toto, arguing that he "did not entirely self-represent" because

his standby counsel played the role of "co-counsel" during his trial.

¶15 Courts have traditionally appointed standby counsel "to aid the accused if and when the accused requests help" and "to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. 806, 834–35 n.46 (1975). Particularly, standby counsel assists "the *pro se* defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). But the appointment of standby counsel "does not alter a party's pro se status." *In re C.C.*, 2011 UT App 99, ¶ 7 n.2, 250 P.3d 1038. "Precedent is clear. Defendants who knowingly and intelligently waive their right to assistance of counsel must be allowed to conduct their own defense." *State v. Bakalov*, 862 P.2d 1354, 1355 (Utah 1993) (per curiam). The "choice of self-representation often results in detrimental consequences to the defendant," *Bakalov*, 1999 UT 45, ¶ 15, but "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel,'" *Frampton*, 737 P.2d at 189 (quoting *Faretta*, 422 U.S. at 834–35 n.46). Standby counsel acts only to "protect the rights of accused persons foolishly trying to defend themselves" and to "vindicate the process itself" by promoting fairness in the criminal justice system. *Mayberry v. Pennsylvania*, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring) (internal quotation marks omitted).

¶16 Some courts using this type of "hybrid representation" have muddied the waters of the Sixth Amendment by allowing standby counsel to take on more of the role of counsel during the course of a trial, such as making opening statements and closing arguments, suggesting legal arguments to the defendant, or presenting legal arguments on the defendant's behalf. We recognize that there can be value in appointing standby counsel

to assist a pro se defendant who lacks adequate access to the resources necessary to present his defense or to help the defendant with questions of procedure and protocol in the courtroom. But pro se defendants cannot have it both ways; they cannot invoke the right to self-representation and later claim they were denied the right to the effective assistance of counsel. Nor does a pro se defendant have "a constitutional right to choreograph special appearances by counsel."[3] *McKaskle*, 465 U.S. at 183.

¶17    But neither does it follow that standby counsel may shirk his or her responsibilities with impunity. Counsel does not evade the obligation to adhere to the Rules of Professional Conduct when appointed as standby counsel. And while the Sixth Amendment does not set a baseline standard for standby counsel's performance,[4] the Due Process Clause does. *See Snyder*

---

3. As outlined in *State v. Frampton*, 737 P.2d 183 (Utah 1987), the trial court should conduct "a colloquy on the record" that not only ascertains the validity of a right to counsel waiver, but also "insures that defendants understand the risks of self-representation." *Id.* at 187. As more fully explained in Judge Mortensen's concurring opinion, if a defendant elects to represent himself and the trial court chooses to appoint standby counsel, it follows that the trial court should also advise defendants of the limits of standby counsel's duties and how those limits affect a defendant's decision to represent himself. *Cf. id.* ("[T]he defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (citation and internal quotation marks omitted).

4. We recognize that a few courts have held that ineffective assistance of counsel claims can be brought when standby counsel fails to perform competently. *See People v. Bloom*, 774

(continued…)

*v. Massachusetts*, 291 U.S. 97, 116 (1934) ("Due process of law requires that the proceedings shall be fair, but . . . [i]t is fairness with reference to particular conditions or particular results."), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). *See also Estelle v. Williams*, 425 U.S. 501, 504 (1976) ("Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience."). It would violate due process for a pro se defendant who lacks access to legal materials to be provided standby counsel who subsequently fails to assist the defendant in securing items reasonably requested by the defendant. When standby counsel is appointed, that attorney assumes particular duties in assisting a self-represented criminal defendant, and counsel must discharge those duties.

¶18 Defendant characterizes his standby counsel's role as an active one, and he suggests that this active role brought with it a duty on the part of standby counsel to ensure Defendant "was able to accomplish the tasks he needed." But the record does not reflect that standby counsel took on such an active role in Defendant's defense. Even Defendant concedes that standby counsel was only being used as "a law library" and to help "secure [two] witnesses' presence at [trial]." Moreover, the trial court appointed standby counsel to "act as a resource" out of concern that Defendant did not have access to

---

(…continued)
P.2d 698, 718 (Cal. 1989) (en banc) ("[A] self-represented defendant must show that [standby] counsel failed to perform competently within the limited scope of the duties assigned to or assumed by counsel.") (emphasis omitted); *Downey v. People*, 25 P.3d 1200, 1204 (Colo. 2001) (en banc) (concluding that there is a claim for ineffective assistance of counsel when standby counsel "exceeds his role as advisory counsel").

legal materials.[5] Standby counsel clarified that he could be used "as a resource if there [was] a specific request regarding specific cases[,] . . . specific treatises, Utah Rules of Criminal Procedure, code, etc." Standby counsel's role was limited to helping Defendant get legal materials, with the single additional responsibility of assisting Defendant with subpoenaing witnesses. To show that standby counsel failed to perform those duties, Defendant's claim must be supported by the record. "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively . . . [which] is consistent . . . with the general rule that record inadequacies result in an assumption of regularity on appeal." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92.

¶19　Here, the record is unclear as to what, exactly, standby counsel did and did not do to assist Defendant. First, Defendant maintains that standby counsel was intended to serve more in the role of co-counsel, but the record does not support this claim. Defendant clarified with the trial court on multiple occasions that he was representing himself and would conduct his own

---

5. Pro se defendants have a fundamental right to access court resources, and under this right, they must be provided with "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Defendant did not have access to a law library because the jail in which he was housed did not have one. However, the jail did have a paralegal that would pull requested sources for inmates. But Defendant never requested help from the available paralegal. Standby counsel's duty was to assist him in a comparable way, namely, by pulling the research materials Defendant needed. And "[i]t is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999).

defense. Over the course of trial, standby counsel was limited to helping Defendant with legal research and securing witnesses. Second, the record is silent as to whether standby counsel meaningfully discharged these duties. Even Defendant acknowledges that "[t]he record is silent as to the conversation between [Defendant] and his standby counsel as to counsel's actions" in providing Defendant the access he needed to legal materials and "the record is silent as to . . . what efforts counsel made to locate . . . witnesses."[6] As standby counsel was limited to these two specific duties and the record is silent as to whether standby counsel faithfully discharged them, we assume that standby counsel did what Defendant asked of him and have no occasion to further consider this issue.[7]

---

6. Defendant sought to fill the void in the record with a rule 23B motion to remand. *See* Utah R. App. P. 23B. This motion was denied because Defendant failed to include specific facts and details supporting his claims of ineffective assistance of counsel. *See id.* R. 23B(b) ("The motion shall include or be accompanied by affidavits alleging facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney. The affidavits shall also allege facts that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance.").

7. Even if Defendant had established that standby counsel failed to discharge his duties, it is doubtful that we could conclude the failure was prejudicial, warranting yet another trial for Defendant. Defendant maintains that standby counsel failed to procure witnesses or obtain evidence or legal research on his behalf, but he never demonstrates why this was prejudicial to his case. He alludes to one witness as being "the person he was going to meet the evening the police arrested him," but there is no indication as to what this witness or any other witnesses would have testified. He also fails to show how the outcome of

(continued…)

CONCLUSION

¶20 We conclude that there was no violation of Defendant's speedy trial right in convening his second trial. The trial court did not err when it required Defendant to wear leg restraints during his trial because any prejudice resulting therefrom was attributable to Defendant. We also conclude that standby counsel's conduct violated neither Defendant's right to self-representation nor his right to the effective assistance of counsel. We therefore affirm Defendant's convictions.

———————

MORTENSEN, Judge (concurring):

¶21 I completely concur in the majority opinion. I write separately only to suggest a mechanism whereby the expectations between a pro se defendant and appointed standby counsel can be addressed and more clearly establish whether a voluntary and knowing waiver of counsel has occurred. To be sure, the appointment of standby counsel can introduce an element of uncertainty for appointed counsel in gauging the extent to which counsel can comfortably interject herself into the proceedings. At the same time, unrealistic expectations of a pro se defendant may arise when the function and role of standby counsel is not clear. Accordingly, where standby counsel is appointed, the trial court should strongly consider entering a formal order outlining the parameters of the expected representation.

¶22 As the majority opinion acknowledges, our supreme court, in *State v. Frampton*, 737 P.2d 183 (Utah 1987), addressed the implications inherent in respecting an accused's right to

———————

(…continued)
the trial would have been different had he been given access to the reference materials he requested.

conduct her own defense. In *Frampton*, the court affirmed the convictions of a defendant who had represented himself and concluded that the defendant had knowingly and voluntarily waived his right to counsel. In reaching this conclusion, the court painstakingly reviewed the record in order to verify that the defendant's waiver of his Sixth Amendment right to counsel had been knowingly, intelligently, and voluntarily made. *Id*. at 187–89. However, the court in *Frampton* also noted that generally ascertaining that a defendant is knowingly, intelligently, and voluntarily waiving his right to counsel "can only be elicited after penetrating questioning by the trial court." *Id*. at 187. Indeed, our supreme court pointed trial courts to a scripted colloquy from the Bench Book for United States District Court Judges, outlining questions which might be asked to verify that a defendant understands the significant right being waived and how that waiver might be applied in the real-world setting of a trial court. *Id*. at 187 n.12. Similarly, when appointing standby counsel, trial courts would do well to enter a formal order appointing standby counsel. *See Arkansas v. Robbins*, 985 S.W.2d 293, 294 (Ark. 1998) (noting that the trial court appointed standby counsel "with specific instructions as to their duties in that role"); *New Mexico v. Vincent*, 112 P.3d 1119, 1125 (N.M. Ct. App. 2005) (affirming where the trial court explained that standby counsel "is just there to answer questions that [the defendant] might have and not [to] keep [defendant] from making a mistake").

¶23 In another example, our supreme court remanded a case to the trial court to conduct a "searching" colloquy of a defendant to ensure that the defendant understood the risks of self-representation. *See generally State v. Bakalov*, 862 P.2d 1354 (Utah 1993) (per curiam). The Utah Supreme Court remarked, "The court is also urged to appoint standby counsel to preserve [the defendant's] right to self-representation and to preclude subsequent claims of lack of waiver or ineffective assistance of counsel." *Id*. at 1355. Like the searching questions required in *Bakalov*, a formal order of appointment of standby counsel serves

to both highlight the risks attendant in a defendant representing himself and set expectations and parameters, which can be recurrently reviewed by a pro se defendant as well as standby counsel. Further, a formal order of appointment ensures that a defendant appreciates the truly binary nature of the decision between self-representation and representation by counsel: it is either one or the other.

¶24    Such an order appointing standby counsel, in addition to parameters specific to a case, might include language such as:

> In summary of the warnings that have previously been made to Defendant in open court, and unless and until Defendant expressly invokes the right to counsel and relinquishes his status as pro se counsel:
>
> A. Any witnesses in any hearing or trial will be questioned by Defendant, not his standby counsel.
>
> B. Any arguments made in open court will be made by Defendant, not his standby counsel.
>
> C. Any statements made by Defendant in court can be used against him in this or any other proceeding.
>
> D. Defendant will continually be responsible for compliance with the Utah Rules of Criminal Procedure, the Utah Rules of Civil Procedure, and the Utah Rules of Evidence.
>
> E. The court cannot give any legal advice to Defendant, including advice on how to try this case, hold a hearing, or otherwise proceed in this matter.

F. Standby counsel's role is to act as a resource and is not appointed to keep Defendant from making mistakes.

G. Standby counsel may assist Defendant in obtaining legal resources, but standby counsel is not expected to conduct research for Defendant.

H. In the court's opinion, Defendant would be better served by being represented by an attorney. However, Defendant has elected to knowingly, intelligently, and voluntarily waive his right to counsel.

––––––––––