2026 UT App 4

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL CHARLES MCLAIN,
Appellant.

Amended Opinion[*]
No. 20230241-CA
Filed January 15, 2026

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 211800180

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Derek E. Brown and Karen A. Klucznik,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

TENNEY, Judge:

¶1 Michael Mclain was charged with one count of aggravated sexual abuse of a child, three counts of rape of a child, and one count of attempted rape of a child. Before trial, Mclain requested leave to represent himself, and the court granted Mclain's request. The case went to trial, and the jury convicted Mclain as charged.

---

[*] This amended opinion replaces the opinion that was originally issued on October 17, 2025. In response to a rehearing petition and additional briefing from both sides, this court has revised the analysis set forth in Part II. The remainder of the opinion is unchanged.

¶2    With the benefit of appellate counsel, Mclain now challenges his convictions on several grounds. For the reasons set forth below, we address two of them. First, Mclain argues that the district court did not ensure that Mclain had knowingly and intelligently waived his right to counsel. The State concedes that there was reversible error on this front, so we reverse Mclain's convictions on that basis and remand for further proceedings. Second, Mclain argues that there was insufficient evidence to support his conviction for attempted rape of a child. Because our resolution of this issue would impact proceedings on remand, we address it. As explained below, there was sufficient evidence to support this conviction, so we reject this claim.

BACKGROUND

¶3    In April 2021, Mclain's daughter (Daughter) reported to authorities that Mclain had sexually assaulted and raped her multiple times from 2009 to 2019. In June 2021, Mclain was charged with one count of aggravated sexual abuse of a child, three counts of rape of a child, and one count of attempted rape of a child.

*Waiver of Counsel*

¶4    Mclain was found indigent and appointed counsel (Counsel). At a hearing that was held on September 13, 2021, Counsel informed the district court that Mclain wanted to "do" the preliminary hearing "himself" and then have a form of "hybrid counsel" in which Counsel would be "standing by" moving forward. Counsel asked for a continuance so that he could "look at" whether hybrid counsel is allowed in Utah, as well as to "show [Mclain] what the risks are of doing his own preliminary hearing." The court granted the continuance.

¶5    At a subsequent hearing that was held on September 20, 2021, Counsel informed the court that Mclain "was not interested

in having" Counsel "or any other public defender" represent him. Counsel also told the court that Mclain had written a letter indicating that he "had some serious mental issues." When the court asked Mclain to comment on what Counsel had said, Mclain told the court, "I definitely would like to represent myself in case need be. I don't think there's anybody that can do it better than the man doing something he didn't do, Your Honor." The court responded:

> All right. Well, there's nobody who can testify better than you can testify, but as far as taking action in court to object to procedure or to object to evidence, just because you're the one who's charged doesn't— and you may know more about the facts of the case than anyone else. It's certainly not—that does not necessarily mean that you know more about the law, the procedure or the rules of evidence than someone else. And so . . . you're going to want someone to help you there.

Without resolving the issue of whether Mclain would represent himself, the court continued the proceedings and scheduled another hearing.

¶6    At the next hearing, which was held in October 2021, Counsel informed the court that Mclain "prefers to represent himself." Counsel again expressed concern about Mclain's "mental issue." Later that day, Counsel filed a petition for a competency evaluation, which the court soon ordered. In January 2022, the court reviewed the evaluation and found Mclain to be incompetent but with "a substantial probability of being restored to competency in the foreseeable future." Mclain subsequently received treatment, and at a hearing in April 2022, the court found that Mclain had been restored to competency.

¶7    At a status hearing in October 2022, Counsel reminded the court that Mclain "wanted to do the case himself." When the court

addressed Mclain, it expressed its understanding that he was now "representing [himself]." In various proceedings that were held over the next several months, the court repeatedly expressed that same understanding, and Mclain continued representing himself through the eventual trial.[1]

---

1. As noted, at the outset of the case, Counsel requested leave to look into the possibility of Mclain receiving "hybrid counsel" with Counsel "standing by." The court later allowed Mclain to represent himself, but it clarified at an early hearing that Counsel would still "advise" Mclain and "sit with him." At another hearing, the court said that Counsel could provide "assistance on the outside" and act "as an aid in the courtroom." Counsel filled such a role at trial, stepping in to help Mclain with the questioning of various witnesses and with the admission of his exhibits.

Throughout these proceedings, Counsel and the court continued to refer to Mclain as having "hybrid counsel," and at various times, Counsel suggested that this was justified under a procedure that he had found in California law. Since this case is being remanded, we reiterate that under Utah law, a "defendant is not entitled to a hybrid representation in a criminal case," and this is so because such an arrangement "creates confusion as to who is the ultimate decision-maker," "may lead to ethical concerns for counsel if there is disagreement over trial strategy," and "presents courtroom-management challenges for the trial judge." *State v. Grover*, 2022 UT App 48, ¶ 55, 509 P.3d 223 (quotation simplified).

That said, the process that was actually followed seems more akin to one in which Counsel was acting as "standby counsel." *State v. Rohwedder*, 2018 UT App 182, ¶ 15, 436 P.3d 324 ("Courts have traditionally appointed standby counsel to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." (quotation

(continued…)

*Trial*

¶8 After a preliminary hearing, Mclain was bound over on all charges. The case later went to a jury trial.

¶9 At trial, the State's only witness was Daughter. Daughter testified about the events supporting the five counts as follows:

- **Count One (aggravated sexual abuse).** Daughter said that when she was five years old, Mclain came into her bedroom one night, closed the door, took her clothes off, laid her down on her bed, and touched her breasts and vagina. Daughter said that when she tried to push Mclain off, "he got aggressive." She "got really scared" and called for her mom, at which point Mclain left the room.

- **Count Two (rape of a child).** Daughter said that one evening when she was ten years old, Mclain came into her bedroom, "slammed the door," and "came really close" to her. Daughter said that she tried to "push him off," that she "told him no," and that she "stood up on [her] bed" and went "to the other side" in an effort to get away from him. When Daughter was asked why she reacted this way, she said that she remembered "the first time," and "at this age" she now "kind of understood what was going on" and "didn't want it to happen again." Daughter said that

---

simplified)). Standby representation "does not alter a party's pro se status." *Id.* ¶ 15 (quotation simplified). Rather, it involves a situation in which a criminal defendant "invokes the right to self-representation" but "requests help," *id.* ¶¶ 13, 15 (quotation simplified), and Utah courts have previously recognized that standby counsel is permitted, *see id.* ¶ 16 ("We recognize that there can be value in appointing standby counsel to assist a pro se defendant who lacks adequate access to the resources necessary to present his defense or to help the defendant with questions of procedure and protocol in the courtroom.").

Mclain grabbed" her, "forced [her] on the bed," took her clothes off except for her bra, and then "raped" her, which she clarified meant that Mclain had "sexual intercourse" with her. Daughter said that she "was crying and telling him no the whole time."

- **Count Three (rape of a child).** Daughter said that on another occasion when she was nine or ten years old, she was alone in the basement one afternoon playing Xbox when Mclain entered through the basement door, came up to her, took her clothes off, pinned her down on the couch, and "raped [her] again," which she clarified as meaning that he "put his penis in [her] vagina." Daughter said that she initially "froze" and "couldn't move or fight him off," but that in "the middle" of the intercourse, she threw the Xbox controller at him, at which point Mclain just "picked it up and threw it and got really angry."

- **Count Four (rape of a child).** Daughter said that on an occasion when she was "almost 11" years old, she was downstairs in the basement when Mclain called her up from the top of the stairs. She said that when she got upstairs to the living room, Mclain forced her onto the couch and again "rape[d]" her by putting "his penis" in her "vagina." Daughter said that she tried to "fight him off" by trying to get her "legs under [him] so [she] could kick him off" but that she "couldn't." She also said that she "tried to punch him, but it didn't work."

- **Count Five (attempted rape of a child).** After recounting the above incidents, Daughter was asked, "Were there any other times that something happened?" She replied, "Not sexual intercourse or anything like that, but he did try again." Daughter then testified that on an occasion when she was 11 years old, she was upstairs in her bedroom when Mclain "came in," "shut the door," and "got on top

of" her. Daughter said that she was lying "on [her] bed on [her] phone" and "really didn't want it to happen again," so she "kneed him multiple times in the stomach and the groin." She said that after she kneed Mclain, he "rolled over," at which point she "jumped off the bed." She said that Mclain then "got up and slammed the door and left the house."

¶10 In the jury instructions, the jury was told that for purposes of Count Five, it could not convict unless it found beyond a reasonable doubt that Mclain had intentionally, knowingly, or recklessly "[a]ttempted to have sexual intercourse" with Daughter while she "was under 14 years old." The jury was further instructed that "[a] person is guilty of an attempt to commit a crime if he engages in conduct constituting a substantial step toward commission of the crime and intends to commit the crime. Conduct constitutes a substantial step if it strongly corroborates the actor's intent to commit the crime." During the portion of closing argument in which the prosecutor addressed Count Five, the prosecutor explained, "Throwing [Daughter] on the bed is what I'm submitting to you is a substantial step towards the crime. [Mclain] had done this kind of thing to her before. She said that the reason why she was running is she was afraid that it was going to happen again."

¶11 The jury convicted Mclain on all five counts.

ISSUES AND STANDARDS OF REVIEW

¶12 Mclain raises several issues on appeal, but as explained below, we need address only two of them.

¶13 First, Mclain argues that the district court erred by allowing him to represent himself without first ensuring that he had knowingly and intelligently waived his right to counsel. "Whether a defendant's waiver [of counsel] was knowing and

intelligent involves a mixed question of law and fact which we review for correctness, but with a reasonable measure of discretion given to the trial court's application of the facts to the law." *State v. Lee*, 2024 UT App 2, ¶ 7, 542 P.3d 974 (quotation simplified).

¶14 Second, Mclain argues that the district court erred in submitting the attempted rape of a child charge to the jury given that, in Mclain's view, the evidence was insufficient to support conviction. Mclain concedes that this issue is unpreserved, so he asks us to review it for either exceptional circumstances or plain error. The question of whether the exceptional circumstances exception justifies review of an unpreserved claim "is a question that, by definition, arises in the first instance on appeal, and it is therefore a question of law." *State v. Hembree*, 2025 UT App 166, ¶ 18, -- P.3d –. Because a plain error claim likewise "involves no lower court ruling, we decide the claim in the first instance as a matter of law." *State v. Dew*, 2025 UT App 22, ¶ 28, 566 P.3d 53, *cert. denied*, 568 P.3d 264 (Utah 2025).

## ANALYSIS

### I. Right to Counsel

¶15 "The Sixth Amendment to the United States Constitution guarantees defendants the right to counsel in felony proceedings." *State v. Pedockie*, 2006 UT 28, ¶ 25, 137 P.3d 716. "Defendants also have the right to waive their right to counsel." *Id.* ¶ 26. However, "because pro se defendants may often find themselves at a serious disadvantage in our legal system, it is the solemn duty of the trial court to ensure defendants exercise their right of self-representation voluntarily, knowingly, and intelligently." *State v. Lee*, 2024 UT App 2, ¶ 9, 542 P.3d 974 (quotation simplified). Our cases set out two paths under which a court can find that a defendant's waiver was knowing and intelligent. First, "a colloquy on the record," in which the court

explains the disadvantages of self-representation, is "the preferred method of determining whether a defendant is aware of" the risks of proceeding pro se. *Pedockie*, 2006 UT 28, ¶ 42. Second, "[a]bsent a colloquy on the record, a reviewing court should review the record de novo to determine whether the defendant knowingly and intelligently waived" his or her right to counsel. *Id.* ¶ 45.

¶16 As discussed above, the only colloquy in which the court appears to have discussed the disadvantages of self-representation with Mclain occurred during the September 20, 2021, hearing. In his opening brief, Mclain argues that this colloquy was inadequate under our caselaw. Mclain further argues that, even if the colloquy was somehow adequate, it occurred during a period in which he was incompetent—and, thus, that his waiver of his right to counsel could not have been knowing or voluntary.

¶17 In its responsive brief, the State concedes that "under the Court's recent precedent, a new trial is required because the record doesn't show Mclain's waiver of counsel was knowing and intelligent." *See, e.g.*, *Lee*, 2024 UT App 2; *State v. West*, 2023 UT App 61, 532 P.3d 114; *State v. Patton*, 2023 UT App 33, 528 P.3d 1249. Having reviewed the record ourselves, we conclude that Mclain's arguments and the State's concession are well-taken. We accordingly reverse Mclain's convictions and remand for further proceedings.[2]

---

2. In his opening brief, Mclain raises two additional issues that warrant brief mention here. First, Mclain argues that the district court improperly deprived him of several peremptory challenges during jury selection. Second, Mclain argues that the verdict form was flawed because it instructed the jury to deliberate on his "guilt or innocence" with respect to each charge. In its responsive brief, the State suggests that if we reverse on the waiver of counsel

(continued…)

## II. Sufficiency of the Evidence

¶18 Mclain next argues that the court should have directed a verdict on Count Five (which, as explained, was for attempted rape of a child) because, in Mclain's view, there was insufficient evidence to support conviction on that count. Although Mclain did not request a directed verdict below, he asserts on appeal that review of this unpreserved claim is warranted under either exceptional circumstances or plain error.

¶19 As an initial matter, we note that, unlike the peremptory challenge and verdict form issues, there is reason for us to address this issue even though we have reversed Mclain's conviction. It's well-settled that a directed verdict functions as an acquittal for double jeopardy purposes. *See State v. Musselman*, 667 P.2d 1061, 1065 (Utah 1983) ("Once a criminal charge has resulted in an acquittal[,] . . . the prohibition against double jeopardy prevents that determination from ever again being challenged. It is of no consequence that the determination was made as a matter of law by a directed verdict of acquittal, or as a matter of fact by the trier of fact."); *State v. Cegers*, 2019 UT App 54, ¶ 18, 440 P.3d 924 (reviewing a district court's denial of a defendant's motion for a directed verdict because "if the evidence at trial was insufficient to sustain [the defendant's] convictions, double jeopardy may bar retrial"). Thus, if Mclain is correct that he was entitled to a directed verdict on this count, he could not be retried for it on remand. It's therefore appropriate—indeed, necessary—for us to resolve this issue now.

¶20 For analytical reasons, we start with Mclain's claim that exceptional circumstances warrant review. The exceptional

issue, we need not address the peremptory challenge and verdict form issues because the alleged errors are "unlikely to recur on retrial" and "can easily be avoided on remand." Mclain does not argue otherwise in his reply brief. We accordingly decline to address those issues.

circumstances doctrine allows an appellate court "to reach an unpreserved issue where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *State v. Van Huizen*, 2019 UT 01, ¶ 22, 435 P.3d 202 (quotation simplified). "Once a party shows that a rare procedural anomaly exists, it opens the door to a deeper inquiry in which additional factors must be considered to determine whether an appellate court should reach an unpreserved issue." *In re adoption of E.M.F.*, 2022 UT App 43, ¶ 21, 509 P.3d 214 (quotation simplified). These "factors include whether our failure to consider the issue would result in manifest injustice, whether a significant constitutional right or liberty interest is at stake, and judicial economy." *Id.* (quotation simplified).

¶21 Mclain argues that the exceptional circumstances doctrine applies because the district court failed to ensure that he had knowingly and intelligently waived his right to counsel. In a responsive brief, the State agrees that the court's failure satisfies this initial step. The State also agrees that the "deeper inquiry" factors support review, *id.*, given that Mclain is asserting a claim of insufficiency of the evidence, which, again, could have double jeopardy implications on remand. In light of Mclain's assertions and the State's concessions, we agree that the exceptional circumstances doctrine applies and allows us to review this otherwise unpreserved issue.

¶22 Before turning to the merits, we also note that, while the plain error doctrine requires an appellant to show that an error was obvious, Utah appellate courts have not previously applied a similar requirement in cases where review was justified by exceptional circumstances. To the seeming contrary, we have held that, when the exceptional circumstances doctrine applies, it "permit[s] consideration of the merits of the issue on appeal." *State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996). And in several past cases, Utah appellate courts have reached the merits of otherwise unpreserved claims after concluding that this exception applies, and they've done so without requiring any additional

showing of obviousness. *See, e.g., In re adoption of K.A.S.*, 2016 UT 55, ¶ 21, 390 P.3d 278; *State v. Lopez*, 873 P.2d 1127, 1134 n.2 (Utah 1994); *State v. Haston*, 846 P.2d 1276, 1277 (Utah 1993); *Albores v. Bracamontes*, 2006 UT App 204, ¶¶ 4–10, 138 P.3d 106; *cf.* Utah R. Civ. P. 46 ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."). In light of this authority, we conclude that, because the exceptional circumstances doctrine applies here, it's appropriate for us to review Mclain's insufficiency claim on the merits without any additional showing. With that as the backdrop, we turn to Mclain's claim.

¶23 As noted, Mclain claims that there was insufficient evidence to support his conviction for attempted rape of a child. In Mclain's view, there was no evidence to show that he did anything more than "get[] on top of" Daughter, which he regards as being insufficient to constitute a substantial step toward committing this offense. Mclain also argues that the evidence was insufficient to show that he had the intent "to engage in sexual intercourse, as opposed to some other sexual conduct." From all this, he claims that the district court should have directed a verdict in his favor on this charge. We disagree.

¶24 "At the conclusion of the evidence by the prosecution, or at the conclusion of all the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." Utah R. Crim. P. 17(o). The question before a court on such a motion is whether, "upon reviewing the evidence and all inferences that can be reasonably drawn from it, . . . some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Epps*, 2013 UT App 29, ¶ 2, 296 P.3d 777 (quotation simplified); *see also State v. Mead*, 2001 UT 58, ¶ 67, 27 P.3d 1115 (noting that it "is the jury's role to determine the weight and

credibility of [the] evidence" and that juries are allowed to draw "reasonable inferences" when doing so).

¶25 A person commits rape of a child by having sexual intercourse with an individual who is younger than 14 years old. *See* Utah Code § 76-5-402.1(1)(a), (2). A person is guilty of an attempted crime if he or she (1) "engages in conduct constituting a substantial step toward commission of the crime" and (2) "intends to commit the crime." *Id.* § 76-4-101(1)(a), (1)(b)(i). Conduct "constitutes a substantial step if it strongly corroborates the actor's mental state." *Id.* § 76-4-101(2). In this sense, the substantial step and intent elements are somewhat intertwined. *See, e.g.*, *State v. Smith*, 2024 UT 13, ¶¶ 23–24, 548 P.3d 874 (discussing whether acts that are "mere preparation" could constitute a substantial step and noting that "if, in a particular case, preparatory actions are deemed not to constitute a substantial step, it is because the conduct in question did not strongly corroborate the actor's intent to commit the underlying crime under the circumstances, not because there is a categorical rule that preparation is insufficient as a matter of law").

¶26 In addition, it is well-established that "intent can be proven by circumstantial evidence." *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346 (quotation simplified). "When intent is proven by circumstantial evidence," the court "must determine (1) whether the State presented any evidence that [the defendant] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent." *Id.* (quotation simplified).

¶27 Daughter testified that Mclain "came in" to her bedroom while she was alone, "shut the door," and "got on top of" her. She testified that she had to physically fight him off, at which point she "jumped off the bed" and Mclain "got up and slammed the door and left the house." Thus, by Daughter's account, this was not a benign encounter, but it was instead a decidedly aggressive

one. From these circumstances alone—a man isolating a female in a bedroom and then getting on top of her with enough force and in such a manner that she felt compelled to physically fight him off—the jury may well have been entitled to draw the reasonable inference that Mclain was trying to have sexual intercourse with Daughter.

¶28 But as the State points out, this was not the only evidence that was before this jury. As noted, Daughter had just testified about three incidents in which Mclain had sexual intercourse with her during the past one or two years. Immediately after she finished testifying about those incidents, the prosecutor asked her if there were "any other times that something happened?" Daughter's response was, "Not sexual intercourse or anything like that, but he did *try again*." (Emphasis added.) After this exchange, Daughter was asked to describe the incident that supported the attempted rape of a child charge. While testifying about this event, Daughter said that she fought Mclain off because she "really didn't want it to happen *again*." (Emphasis added.)

¶29 By twice using the word "again," Daughter expressly linked the prior incidents of sexual intercourse to what she thought Mclain was attempting to do in this instance. And the prosecutor drew this same link during closing argument, telling jurors, "Throwing [Daughter] on the bed is what I'm submitting to you is a substantial step towards the crime. [Mclain] had done this kind of thing to her before. She said that the reason why she was running is she was afraid that it was going to happen again." Thus, both Daughter and the State asserted to the jury that the other alleged acts of sexual intercourse were evidence of Mclain's intent to have sexual intercourse with her on this occasion too.

¶30 Mclain nevertheless argues that there were three reasons why the jury could not draw a link between the past incidents and the one at issue in this count.

¶31 First, Mclain claims the district court gave an instruction that foreclosed this. But we read the instruction in question differently. In that instruction, the jury was told to "consider each charge separately," and, "[f]or each crime charged, [to] consider all of the evidence related to that charge." The jury was also told that its "verdict on one charge does not determine [its] verdict on any other charge." But although the jury had been instructed to consider each *charge* separately, on its face, that instruction did not preclude the jury from using *evidence* that supported one charge as circumstantial evidence of Mclain's intent relating to another charge.

¶32 Second, Mclain claims that, even if it's true that the instructions themselves allowed the jury to consider the earlier incidents when determining Mclain's intent with respect to the final charge, the court should have prohibited this use. In its responsive brief, the State claims that this was admissible pursuant to rule 404(b) of the Utah Rules of Evidence. In response, Mclain claims that it was not. But in our view, the evidence was admissible outside of rule 404(b) entirely.

¶33 Under rule 404(b)(1) of the Utah Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." As our supreme court has recently recognized, however, evidence that is "intrinsic" to the facts in question falls "outside the scope of rule 404(b)." *State v. Blackwing*, 2025 UT 60, ¶ 31, -- P.3d --. This is so under "a text-based application of the rule," because the rule "applies to 'other acts,' not to acts directly connected to the factual circumstances of the crime." *Id.* ¶ 28.

¶34 Other acts are "considered intrinsic" when they are an "integral and natural part" of the "circumstances surrounding the offense for which the defendant is charged," or instead when they are "directly connected to the factual circumstances of the crime." *Id.* (quotation simplified). Importantly, intrinsic evidence is "not

subject to rule 404(b)." *Id.* ¶ 34; *see also State v. Newberry*, 2026 UT App 2, ¶ 45, -- P.3d – (concluding that "rule 404(b) simply does not apply" to intrinsic evidence); *State v. Main*, 2021 UT App 81, ¶ 18, 494 P.3d 1056 (concluding that rule 404(b) "would not apply" to intrinsic evidence).

¶35    In *Newberry*, we recently examined the state of this doctrine as it relates to child sex abuse cases involving multiple acts allegedly committed by the defendant against the same victim. Surveying the cases, we noted that such evidence can be used "'to establish a specific pattern of behavior by the defendant toward one particular child.'" *Newberry*, 2026 UT App 2, ¶ 45 (quoting *State v. Reed*, 2000 UT 68, ¶ 26, 8 P.3d 1025). In this sense, they "may be deemed to be 'part of a continuing narrative rather than an independent act.'" *Id.* ¶ 42 (quoting *State v. Lucero*, 2014 UT 15, ¶ 14 n.7, 328 P.3d 841). We also noted that such evidence is admissible as intrinsic evidence because it "'show[s] context,'" *id.* (quoting *State v. Labrum*, 2014 UT App 5, ¶ 22, 318 P.3d 1151), or for its "narrative value," *id.* (quoting *State v. Verde*, 2012 UT 60, ¶ 28, 296 P.3d 673).

¶36    This was so here. In each of the counts in this case, Mclain was charged with sexually assaulting (or, in Count Five, attempting to sexually assault) the same victim, Daughter. This evidence could therefore be used to establish a "specific pattern of behavior by the defendant toward one particular child." *Reed*, 2000 UT 68, ¶ 26. And it had significant contextual and narrative value under the particular facts of this case. Again, with respect to the incident at issue in Count Five, Daughter testified that Mclain "came in" to her bedroom, "shut the door," and "got on top of" her, and she further testified that she had to fight him off. She also testified that it appeared to her in real time that Mclain was trying to have sexual intercourse with her "again," meaning that his actions and demeanor on this occasion seemed similar to his actions and demeanor on the prior occasions in which he had allegedly had sexual intercourse with her. Daughter thus directly linked Mclain's conduct in this incident with his conduct in the

prior incidents, explaining that it was this similarity that caused her to fear an ensuing sexual assault and physically fight him off. In light of this, it would have been difficult for Daughter to explain either the nature of Mclain's conduct or her reaction to it without linking the various incidents. This evidence was therefore intrinsic evidence. And because it was, "rule 404(b) simply does not apply." *Newberry*, 2026 UT App 2, ¶ 45.[3]

---

3. Even if this evidence did not qualify as intrinsic evidence, we would still conclude that it was admissible under rule 404(b). Under rule 404(b)(2) of the Utah Rules of Evidence, "intent" is one of the permissible non-propensity purposes for which evidence can be admitted. Moreover, in various cases, Utah courts have held that evidence of one act could be used as evidence of a defendant's intent with respect to multiple charged offenses. *See, e.g., State v. Simpson*, 2025 UT App 32, ¶ 17, 566 P.3d 756 (discussing the admissibility of a prior act that was admitted to show the defendant's "motive, intent, plan, absence of mistake, or lack of accident" for the charged offenses of rape *and* object rape); *State v. Macleod*, 2024 UT App 32, ¶ 52, 546 P.3d 366 (holding that a text message sent by the alleged victim stating that the defendant "just tried to have sex with [her]" supported her account that the defendant "made some sort of unwanted sexual advance—which could include the alleged rape *and* object rape" (emphasis added), *cert. denied*, 558 P.3d 87 (Utah 2024); *State v. Bradley*, 2002 UT App 348, ¶¶ 25, 27, 57 P.3d 1139 (concluding that evidence of prior sexual abuse with a different victim was "admissible for the proper, non-character purpose of showing intent under rule 404(b)" and noting that the testimony was relevant "to demonstrate an intent similar to that of the charged *offenses*" (i.e., multiple counts of aggravated sexual abuse of a child and multiple counts of sodomy on a child) (emphasis added)).

(continued…)

¶37   Finally, despite this authority, Mclain claims that under principles that we recently recognized in *State v. Mendoza*, 2025 UT App 179, -- P.3d --, the State should have been prohibited from using this evidence. We disagree.

¶38   The defendant in *Mendoza* was charged with two counts relating to his stepdaughter—the first count was for rape of a child, and the second count was for aggravated sexual abuse of a child. *See id.* ¶ 1. Pursuant to rule 404(c), the State asserted to the jury that the incident at issue in the second count was propensity evidence that helped the State prove its case with respect to the first count. *See id.* ¶¶ 9, 20. On appeal, the defendant argued that his counsel provided ineffective assistance by not objecting to the State's use of this evidence. *See id.* ¶ 26. Reviewing that claim, we expressed some concern that the use might have been improper. *See id.* ¶¶ 31–32. We pointed out that under rule 404(c), the existence of a prior act "need only be established by a preponderance of the evidence." *Id.* ¶ 31. But since both incidents were being submitted to the jury as criminal charges, this meant that the State needed to establish that both incidents occurred with proof beyond a reasonable doubt. Because of this dynamic, we opined that "[i]f one charged count could be used as propensity evidence for another charged count," this might impermissibly muddy up the burdens of proof, and it might also cause the jury to "effectively" consider the two counts "together, rather than separately." *Id.* ¶ 32. Having expressed that concern, however, we ultimately did not definitively decide that issue. This

---

This is what the State did here. Through both Daughter's testimony and the prosecutor's closing argument, the State not only sought to show that the past incidents established a pattern of conduct with respect to Daughter, but, relatedly, that they were circumstantial evidence of what Mclain intended to do in the incident at issue in Count Five. Even if this evidence were subject to a rule 404(b) analysis, we would therefore regard it as admissible.

was so because the defendant in *Mendoza* had affirmatively admitted to the conduct at issue in the second count, thus establishing that the conduct had occurred under any burden of proof. *See id.* ¶ 33.

¶39    Contrary to Mclain's assertions, however, the potential problem that we identified (though did not decide) in *Mendoza* is simply not present here. Again, in *Mendoza*, the evidence at issue was admitted for propensity purposes pursuant to rule 404(c). As explained above, we've now concluded that the evidence at issue in this case was admissible as intrinsic evidence. There accordingly was not a potential problem in this case relating to differing burdens of proof, much less a problem that implicated potential concerns about propensity-based evidence.

¶40    In short, we conclude that Daughter's account of the incident was likely enough on its own to support conviction on Count Five. We further conclude that Daughter's testimony linking the various incidents was intrinsic evidence as to Count Five, and that when that testimony is added into the mix, this is even more reason why Mclain was not entitled to a directed verdict. We therefore conclude that, reviewing the claim under exceptional circumstances, there was no error. And since plain error review requires a showing of both an error and the obviousness of that error, *see State v. Griffin*, 2016 UT 33, ¶ 17, 384 P.3d 186, we reject this claim under plain error too.

CONCLUSION

¶41    We conclude that Mclain did not knowingly and intelligently waive his right to counsel, so we reverse his convictions and remand for further proceedings. We also conclude that the district court did not err by failing to issue a directed verdict on the attempted rape of a child charge; as a result, double jeopardy does not bar retrial on this charge on remand.

_____